### VIVIAN TAYLOR v. THE STATE.

#### No. 3655. Decided October 27, 1915.

#### Rehearing denied December 1, 1915.

**1.—Murder—Evidence—Bills of Exception.**

Where, upon appeal from a conviction of murder, the bill of exceptions failed to show the answer of the witness to a question propounded by the State as to when he saw the parties running, the same can not be reviewed on appeal.

**2.—Same—Evidence—Bill of Exceptions.**

Where, upon trial of murder, the district attorney asked the witness whether the deceased stopped before he was killed after he began running; this was not a leading question; besides the bill of exceptions was defective.

**3.—Same—Evidence—Leading Question.**

It was not a leading question to ask the witness whether he saw deceased and defendant all the time until the former was killed.

**4.—Same—Evidence—Memory of Witness.**

Where, upon cross-examination, the witness answered that he did not remember about the question asked him as to whether deceased and defendant were close together, and there was no predicate laid to impeach the witness, this bill of exceptions presents no error.

**5.—Same—Evidence—Threats—Individuating Deceased.**

Where, upon trial of murder, the facts in the case showed that the deceased was one of the Nugent family, and was related to the person who was killed by one of the Taylor family, and defendant was one of the latter, there was no error in permitting the State to show that the defendant made a statement in the presence of the witness that one Taylor was "worth the whole damn Nugent family," as the deceased was clearly included in this declaration.

**6.—Same—Evidence—Bill of Exceptions—Motive.**

Where, upon trial of murder, a witness for the State was asked if one of the Taylor family had not been convicted of murder, which was answered in the affirmative, and the defendant objected when the witness was further

asked for whose murder the conviction was had, and the witness answered, for the killing of deceased's half-brother; such testimony was admissible to show the relation of the parties and the probable motive defendant had to kill the deceased.

**7.—Same—Evidence—Bill of Exceptions—Impeachment of Witness—Examining Trial Testimony.**

Where, upon trial of murder, defendant objected to the cross-examination of one of his witnesses, whether the witness did not make certain statements in his examining trial testimony, on the ground that it was not properly signed and sworn to, which objection was overruled, there was no reversible error, as it was proper to lay a predicate to impeach by the examining trial testimony of said witness, whether reduced to writing or not, as contradictory statements of witnesses may be proved, whether they are signed and sworn to or not, and this, although the State did not introduce such impeaching testimony, no injury having been shown.

**8.—Same—Bill of Exceptions.**

Where the bill of exceptions was too indefinite in pointing out the testimony objected to, and for what purposes such objections were made, the same can not be considered on appeal.

**9.—Same—Bill of Exceptions.**

Where the answer of the witness is not given, nor the bill points out why the objections were made, the same can not be considered on appeal.

**10.—Same—Evidence—Tracks.**

Where, upon trial of murder, the witness was asked if he looked at the horse tracks found near the body and could tell whether the horses were walking or running, and the witness answered they were running, there was no error.

**11.—Same—Evidence—Instrument Used—Remarks by Court.**

Where, upon trial of murder, a witness for the State was asked to identify the gun which was used in the killing, which he did, to which defendant objected, and the court remarked that he did not like this kind of procedure, this was not of sufficient importance to be seriously considered on appeal.

**12.—Same—Evidence—Objections—Like Testimony by Other Witnesses.**

Where, upon trial of murder, defendant objected to the manner of examination of the wife of the deceased as to her feelings toward defendant and his family, and the witness answered she did not like one of defendant's family because he had killed her son, this was not reversible error, as the fact had already been shown by other testimony, without objection.

**13.—Same—Evidence—Not Material.**

Where a State's witness stated that her former husband was a brother of the deceased, who had been killed by one of defendant's family, this, under the facts of this case, was not reversible error.

**14.—Same—Argument of Counsel.**

Where the county attorney's argument was based upon the evidence, there was no error.

**15.—Same—Argument of Counsel.**

Where, upon trial of murder, the district attorney, in his argument, stated that the defendant had a gun in a certain place, and that this appeared from the evidence, as well as that on the examining trial, to which the defendant objected, and also with reference to the State's counsel's argument that defendant bought cartridges, of which there was no evidence, but no charge was requested

to withdraw the same, this did not constitute reversible error. Following Little v. State, recently decided.

### 16.—Same—Evidence—Bill of Exceptions—Impeaching Testimony.

Where defendant objected to the attempt of the State to impeach one of defendant's witnesses by the testimony of a stenographer who had taken the testimony in the examining trial, because the same had not been properly verified, etc., which objections were overruled, there was no error; besides, the bill of exceptions failed to show what testimony was detailed by said stenographer, either from his notes, or without them.

### 17.—Same—Indeterminate Sentence Law—Reforming Sentence.

Where the lower court failed to follow the indeterminate sentence law, the proper order will be entered here, so reforming and correcting the sentence.

Appeal from the District Court of Liberty.    Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of murder; penalty, ten years confinement in the penitentiary.

The opinion states the case.

*H. E. Marshall,* for appellant.—On question of leading questions: Wright v. State, 10 Texas Crim. App., 476; Harvey v. State, 35 Texas Crim. Rep., 545.

On question of threats: Pharr v. State, 10 Texas Crim. App., 485.

On question of impeaching witness: Grosse v. State, 11 Texas Crim. App., 364; Price v. State, 43 S. W. Rep., 96.

On question of remarks by court: Moore v. State, 33 Texas Crim. Rep., 306.

On question of permitting stenographer to testify from his notes: Grosse v. State, supra.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of leading questions: Kennedy v. State, 19 Texas Crim. App., 618; Moore v. State, 49 Texas Crim. Rep., 499; Branch's Crim. Law, sec. 334.

On question of laying predicate for impeaching witness: Jordan v. State, 10 Texas Crim. App., 479; Branch's Criminal Law, sec. 872.

On question of argument of counsel: Gilmore v. State, 37 Texas Crim. Rep., 178; Branch's Crim. Law, sec. 61.

On question of stenographer's unverified notes to impeach witness: Stringfellow v. State, 42 Texas Crim. Rep., 588; Morawitz v. State, 49 id., 366; Branch's Crim. Law, sec. 929.

DAVIDSON, JUDGE.—This conviction was for murder, the punishment being assessed at ten years confinement in the penitentiary.

Suggestion is made that the sentence was in accordance with the verdict for ten years and did not take into consideration the indeterminate sentence law. This judgment will be so corrected as to comply with the indeterminate sentence law and make the punishment not less than five nor more than ten years. The proper order will be

entered by the clerk of this court so reforming and correcting the sentence.

There were two theories in the case,—one was murder and the other self-defense. Manslaughter was also given in charge by the court. At least this is a sufficient statement of the case from that viewpoint. The State's view of it was that appellant had animosity against the Nugents, the deceased being named Zimmie Nugent; that on the day of and preceding the killing, in the evening, Gilbert Taylor was convicted for killing one of the Nugents, and that the deceased, Zimmie Nugent, was interested in that case. It is also shown by the State that Gilbert Taylor, when verdict was returned against him, requested appellant to kill the Nugents, and he replied that he would do the best he could. En route from the town of Liberty, where the trial occurred, on the evening after the trial and conviction of Gilbert Taylor, this difficulty occurred. The theory of the State is that appellant went after his gun, returned and killed deceased. It is unnecessary to go into a detailed statement of the facts with reference to this matter. Appellant's theory was that a colloquy ensued and the deceased, Zimmie Nugent, was close enough to, and did, stab him in the back, and he killed him on account of this attack.

There are quite a number of bills of exceptions found in the record— something like twenty-eight. The first bill complains of the action of the court permitting the district attorney to show that during the difficulty and when the appellant fired the first shot that he was pointing his gun towards Zimmie Nugent; and, further, that the witness did not think Zimmie Nugent had anything, but would not swear to it. The district attorney also asked this question: "I will ask you to state whether or not you saw Zimmie Nugent and Vivian Taylor when they started to running?" Objection was interposed and the court ruled against appellant, and ordered the witness to answer the question. The answer was, "they were running." He was then asked whether or not he saw them all the time they were running. Objection was urged that the previous answer was sufficient. What the answer of this witness was is not shown in the bill. It is, therefore, unnecessary to consider this further. There is nothing in this bill which would require a reversal of the judgment.

Another bill recites that the district attorney propounded this question to Frank Fregia: "I will ask you to state whether or not Zimmie Nugent stopped before he was killed after he began running." Appellant objected to this on the ground that the question was leading. The court overruled the objection by stating, "I don't think it is." The witness answered, "No, sir, I don't think he stopped until he was killed." The defendant then and there excepted and tendered his bill. We hardly think this was a leading question. This was the only ground urged, and the evidence was permissible anyway.

While the same witness, Frank Fregia, was on the stand the district attorney asked him to state whether or not he saw Zimmie Nugent and Vivian Taylor all the time until Zimmie was killed. The witness

answered, "Yes, sir." Defendant remarked: "May it please the court that we may make the same objection to this part of the testimony. That it is leading and in improper form." The court overruled this objection. It was not leading as to whether or not he could see the witness all the time or not.

Another bill recites that Emma Fregia, on cross-examination, was asked by appellant's counsel: "Isn't it a fact that you testified on habeas corpus trial that they were as close together as me and Mr. Marshall (referring to Zimmie Nugent and Vivian Taylor)? And isn't it a fact that you were as close as we are now, if not closer?" The witness answered: "I do not remember about it." Defendant's attorneys asked: "Isn't it a fact that they were as close as we are now?" The State objected. Defendant suggested that he thought the answer was proper and especially went to show she testified on the habeas corpus trial: "We were as close as we are now, if not closer," and goes to show that they were close enough for Zimmie to have cut defendant in the back. The court said: "I don't think that she can be made to answer that question if she says she does not remember. Go ahead, gentlemen, and let's get through with this case." Exception was noted. The court said, "Yes, sir." To which ruling of the court defendant excepted. We think this bill shows no error. Of course if the witness did not remember it would be difficult to make her testify to things she did not recall. This would have afforded, however, the ground for impeaching her if she had sworn as indicated on some previous occasion. Where a witness is asked about a matter and fails to remember, it can be shown that the witness testified to the matter on a previous occasion as a means of contradiction or impeachment. As this bill is presented we find no error.

Bills Nos. 6, 7, 8, and 9 are practically the same. The jury were excused while the witness Ellis was on the stand and after their retirement Mr. Ellis, being a witness for the State, the State desired to show by Ellis that appellant made a statement in his presence that "one Taylor was worth the whole damn Nugent family." Appellant objected to this as irrelevant and immaterial to any issue in the case and did not tend to show he made this statement as a threat against the life of deceased, and "we wish to make our objection" to the introduction of Mr. Ellis' testimony. The court overruled the objection and a bill of exception was noted. Then followed the examination of Mr. Ellis, the substance of which was that on the day of the homicide and after Gilbert Taylor had been convicted, the witness was permitted to state that appellant was in his, witness', place of business, had a conversation with him or he heard a conversation in which appellant stated, referring to the Gilbert Taylor case, and in which something was said about Gilbert getting a term in the penitentiary. That witness remarked: "It's a bad thing for anybody to go to the penitentiary," and appellant said, "Yes, one Taylor is worth the whole damn Nugent family." That he thought that was about the substance of the conversation. Appellant objected to this on various grounds, and especially that no particular

member of the family was individuated or specified. We think the facts of the case, even this bill of exceptions, sufficiently show that this testimony was admissible. It showed a feeling of opposition, if not motive, which was sufficient to include the deceased. He was one of the Nugent family and closely related to the Nugent who was killed by Gilbert Taylor. He was clearly included in the family and was sufficiently indicated as being one of them.

Bill of exceptions 8 and 9 referred to, was in regard to the witness Franklin Ellis, son of the other Ellis. The substance of the bill is practically the same as above mentioned, towit: bills Nos. 6 and 7.

Bills Nos. 10 and 11 recite that Carlisle, a witness for the State, was asked if Gilbert Taylor was convicted last February. The answer was in the affirmative. When asked for the murder of whom, objection was interposed, which was overruled, and the witness answered for the killing of Alfred Nugent's son. Alfred Nugent and the deceased, Zimmie Nugent, were half-brothers. It was further shown by this witness Carlisle on the trial of Gilbert Taylor, Zimmie Nugent was a witness for the State and assisted in the prosecution of Gilbert Taylor. Further objection was urged that this was irrelevant, immaterial and prejudicial, and introduced for the purpose of inflaming the minds of the jury against the defendant and that appellant was in no way connected with the killing of Alfred Nugent's son by Gilbert Taylor. It was also shown by this witness that he had sent after Frozene Nugent to come to court as a witness, and that the witness had sent Albert Nugent after her in a buggy. Objection was urged to this because it was "boosting up and corroborating their own witnesses that they have brought here." The objection was overruled. This testimony was admissible on the question of the relation of the parties to the transaction and the probable motive to kill Zimmie Nugent. Zimmie Nugent was a half-brother of Alfred Nugent, whom Gilbert Taylor killed, and was assisting in the prosecution of Gilbert Taylor. Appellant was closely related to Gilbert Taylor, and for reasons heretofore set out we think this testimony was admissible to show relation of the parties and the mental condition and status of appellant towards deceased, Zimmie Nugent.

There are three other bills, Nos. 13, 14, and 15, which recite that while the witness Dagle was testifying, on cross-examination, he was asked: "Didn't you testify on the examining trial the day after this happened?" He answered in the affirmative. He was then asked: "Didn't you state in answer to this question, 'What did you do then?' 'Well, Frank waved for Feran to bring his paw's horse.'" Defendant objected to all this purported testimony on the examining trial on the ground it was not properly signed, not sworn to, and was never shown to the witness for him to change his testimony. The court ordered the examination to proceed. They made further objection that it was improper to cross-examine the witness on what is purported to be testimony on the examining trial, when the same is not sworn to by the witness; and that the testimony he is reading from is not verified as

required by law.  The court remarked, "This is the same thing you were doing yesterday.  Go ahead, gentlemen."  Exception was taken to this remark of the court.  Then it was asked: "Wasn't you asked this question on the examining trial: 'What did you do?' and didn't you answer thus: 'Well, Frank waved for Feran to bring his paw's horse,' Did you say that?  A.  I don't remember.  Q.  And wasn't you asked this question: 'What did Feran do then?' and wasn't your answer, 'Feran just stopped'?  A.  No, sir."  Appellant again objected.  Then follows quite a lot of this same character of testimony, all of it being questions to the witness as to what occurred during the examining trial.  It covers several pages.  We are of the opinion that these bills do not show any error.  It is proper to lay a predicate to show what the witness stated on the examining trial, whether reduced to writing or not, or whether he had signed the document or not.  If he stated testimony on an examining trial different from what he testified on the final trial he could be thus impeached and the fact that it was or was not reduced to writing would not alter the rule.  The predicate could be laid for the impeachment, and if the necessity arose, or the occasion was made to introduce the impeaching testimony, it could be as well done this way as if the testimony had been reduced to writing and signed.  Contradictory statements of witnesses may be proved, whether sworn to or not, whether reduced to writing or not.  If the witness failed to answer for the State in accordance with his previous testimony, evidence could be introduced to show the contradiction.  The fact that the State did not introduce such testimony would not change the rule of laying the predicate.  It is not always advisable to lay a predicate, however, without following it up, and if no injury is shown to have been done by reason of this condition of things, it would not be reversible error.  If the witness stated, on the final trial, testimony different from what he stated on the examining trial he could be contradicted; or if he stated different testimony on the examining trial from what he stated on the final trial, the State might contradict him by showing his former testimony or former statement was in contravention of what he now testifies.

The appellant proposed to prove by the witness Daniel that the deceased had frequently talked to him about his trouble and had told him of various people he had whipped and beat and he "was the bully of the Fregia settlement."  This seems to have been excluded by the court, but the grounds of objection are not stated, or the purpose for which the testimony was sought.  Therefore the bill is too indefinite.

By the witness Barrow appellant proposed to prove, and would have done so had he been permitted, specific acts of the deceased, or at least such as narrated by the deceased, that he "was the bully of the Fregia neighborhood, or settlement."  The object or purpose of this testimony is not stated in the bill, nor any fact stated that would connect it up or show the purpose for which it was sought.

Abshier, on cross-examination, was asked if he had ever heard of him being in any trouble, or fighting.  "Did you hear that there was a

charge against him for skinning cattle?" Defendant objected. The answer of the witness is not given, nor does the bill show to whom they referred in using the word "he" and "him." The bill is too indefinite to be discussed.

The State introduced Carlisle and we are led to believe, in a general way from this bill, that they were inquiring as to the location of the dead body after the trouble, though this is not specific. However, we are led to believe that that was the subject of the inquiry. He was then asked if he looked at the horse tracks and could tell whether they were walking or running. The court sustained the objection because a predicate had not been properly laid. Then follows various and sundry questions and answers showing this witness had been accustomed to riding horses all his life in practically every conceivable way. He was then asked the question whether or not he could tell by horses' tracks whether they were walking or running. Objection was urged. The court overruled the objection. The witness answered, "They were running." He was then asked if the tracks of the horse on the ground showed him to be walking or running, and he answered as before. It was legitimate testimony and the witness qualified himself to answer the question.

Another bill recites that while this same witness, Carlisle, was on the stand he was asked to look at a gun, and further, if that was the gun he got from Vivian Taylor when he arrested him. And further, if it had been in his possession since the arrest. He stated on cross-examination that he got this gun at Gustave Fruger's, where he found appellant, and that this was the same gun and was the only Winchester there. He was then asked if he was present at the examining trial and heard Dagle's testimony. He answered in the affirmative. Objection was urged because going into a new issue. Defendant stated he wanted to introduce the gun and that was the purpose of putting Carlisle on the stand, and didn't think it was right to reopen the case as all of their witnesses had gone home. The court remarked: "I don't like this kind of procedure, gentlemen, and would not have allowed it if Mr. Manry had not yielded." Defendant said, "We wish to take a bill of exceptions to the remark of the court." While the court is prohibited from making remarks indicating his views of the testimony, or its bearing or relation to the case, we do not believe this remark by the court is brought within the rule and is not of sufficient importance to be seriously considered.

Another bill recites that Mrs. Frozene Nugent was, on redirect examination, asked the following question by the district attorney: "Mr. Marshall asked you a while ago how about the Taylors and how you felt towards them, and you stated to him that you had nothing against any of them except Gilbert?" She said, "Yes, sir." She was then asked: "You stated to Mr. Marshall a while ago you had nothing against any of the Taylors except Gilbert Taylor, Gilbert Taylor was the one convicted by—" The defendant stated: "We certainly object to that question, it has nothing to do with this case." State: "They

brought out she had something against the Taylors. She said she had nothing against any of them except Gilbert, and I want to ask her what feeling she had against Gilbert." Objections were urged on the ground that this was irrelevant, immaterial, incompetent and improper testimony, and highly prejudicial to defendant in this case. The Court: "Let her answer the question." "Q. What answer do you give why you do not like Gilbert Taylor? A. Because he killed my boy." Defendant duly excepted on the grounds above stated. We are of opinion that whether the testimony was inadmissible or not, it would not present error, as the evidence had already shown that Gilbert Taylor had killed the witness' son.

They also proved by this same witness she had been sick for two months and that her former husband was a brother of the deceased. This is a small matter and if error, is not sufficient to require serious consideration.

During the trial of the case the county attorney, in his opening argument, used this language: "The deceased, Zimmie Nugent, was lying on the ground groaning, bleeding and dying when defendant shot him the last time." Objection was urged to this argument. There is some evidence to justify this comment. Some of the testimony goes to the effect that after Zimmie Nugent fell from his horse appellant went back to where he was and shot him again while down.

Another bill recites that while Mr. Manry, district attorney, was arguing the case to the jury, he told the jury that Frank Fruger and Feran Fruger swore that the defendant had a gun when he crossed the marsh, and that Eugene Dagle said the same on the examining trial that he had a gun when he crossed the marsh. Objection was urged to this argument as being improper, and the court told the district attorney that said testimony of the witness Eugene Dagle on the examining trial could not be used as corroborative evidence but only as impeaching evidence. And later Mr. Manry, in his closing argument for the State, and after the court had admonished him that said testimony could only be used as impeaching testimony, he further said: "On the examining trial Eugene Dagle said that Zimmie and his boy were running and the defendant and Rad were running after them, he said that the next day Frank and Feran Fruger said that here on this trial, and it corroborates Frank Fruger and Feran Fruger, and how can you get self-defense out of that." Objection was again urged that they should not consider this testimony as corroborating evidence, and the court so instructed the jury, and again admonished the district attorney not to argue the same as corroborative. That said district attorney further said: "Gentlemen of the jury, the defendant went to Ellis' store and bought cartridges just after having made the threat as stated by the witness Frozene Nugent for the State." The bill recites there was no evidence that defendant had so bought cartridges. This last statement seems to have been beyond the record. As we understand, they undertook to prove, but failed to do so, that appellant bought cartridges. They did prove that he sought to buy cartridges, but Mr. Ellis did not

have them in stock and he failed to buy them. No charge was asked in reference to the matter and none given by the court instructing them not to consider this. In view of the many decisions by this court on this question, we do not believe we would be justified in reversing the case for this reason. Little v. State, decided June 2 last.

Viewing this case from these different viewpoints, we are of opinion that there is no error of sufficient importance to require a reversal, and it is, therefore, affirmed.

*Affirmed.*

### ON REHEARING.

#### December 1, 1915.

DAVIDSON, JUDGE.—On a former day of this term the judgment herein was affirmed. Quite a number of matters were disposed of and bills of exception discussed. The appellant files a motion for rehearing, basing it only on the failure of the court to discuss bill of exceptions No. 28. As the writer wrote the opinion affirming the judgment, he desires to say that in discussing the other bills of the same import he, in his own mind, believed it would be understood that bill No. 28 was disposed of by the decision in regard to the other bills, but as it is presented it will now be discussed.

That bill substantially shows the court permitted the State to "attempt to impeach the witness Dagle," defendant's witness, by the testimony of Perryman. Perryman was the stenographer who had taken the testimony in the examining trial. It is stated in the bill that over objection of defendant, the witness Perryman was permitted to read from portions of a purported statement of facts which Perryman transcribed from his stenographic notes and what was purported to be the evidence of the witness Dagle at the examining trial, the record showing that said statement of facts at said examining trial had not been signed or sworn to by the witness Dagle, and had not been verified by the justice of the peace who held the examining trial, and that same had not been read over to the witness Eugene Dagle, and the witness Dagle had not been given the opportunity to read the same over and make or suggest such corrections in his testimony at the examining trial as he might wish to make. And the witness Perryman testified that he was not an expert court reporter and had not reported more than three or four cases, and that he would not say that his notes reflected absolutely what the witness testified to, but he must have said it, or witness would not have put it down. Perryman further said he had no independent recollection, after consulting the transcribed testimony of the witness Eugene Dagle at the examining trial, as to what the witness Dagle swore, to which defendant objected on the ground that the testimony was inadmissible for the purpose of impeaching Eugene Dagle. What was said with reference to bills of exception Nos. 13, 14, and 15 might apply here, so far as that question is there discussed, but this bill is further deficient in failing to show what testimony was detailed by

Perryman, either from his notes or without them. Of course, the State had a legal right to impeach the witness Dagle on any statement that he made before the jury by statements he made at court or in or out of court at other times or places, either or both. If his testimony at the examining trial was different from what it was on the final trial this matter could be shown, and this whether or not it had been taken down by the stenographer. These matters have been discussed and decided in several cases, and it is not thought necessary to review that question again. But whatever Perryman did write down or whatever he did say before the jury, if he did say anything, is not shown by the bill of exceptions. It is not shown that it impeached or contradicted Dagle, and so far as the bill is concerned it may have corroborated him. The bill recites that these matters were offered for the purpose of attempting an impeachment. Before this sort of matter can be the ground of a reversal it must be shown that the impeachment was wrong, and that the testimony went before the jury erroneously. In order to bring that matter cogently before the court, it must show the matter of impeachment and the testimony introduced to support the predicate. Without that this court is unable to tell or to know whether the testimony introduced had impeached or not. It may have corroborated or it may have impeached, but that would be simply a speculation so far as this court is concerned, unless the bill of exceptions notified us what the testimony, if any, was which was introduced.

Out of deference to the insistence of the able counsel of appellant this matter has been taken up and this much said about it. We do not think, in the light of this bill of exceptions, which forms the basis of this motion for rehearing, there is anything requiring the court to reverse the judgment.

The motion for rehearing will, therefore, be overruled.

*Overruled.*