## Milt Good v. The State.

No. 8608.    Delivered October 8, 1924.

Rehearing denied January 7, 1925.

### 1.—Murder—Continuance—For Plea of Jeopardy.

Appellant had formerly been tried and convicted for killing Allison and his penalty fixed at twenty-five years. He was on trial for the killing of H. L. Roberson, which occurred at the same time. He asked for a postponement until his appeal pending for killing Allison was acted on, contending that the killings was one and the same transaction. The court properly refused to grant him a postponement. The principle of law, of which the invocation is attempted, is that which denies the state the right to maintain two prosecutions, against one for his single art, by which he slays two persons, with *no intent or volition to kill but one*. Appellant's own testimony does not leave in doubt, or subject to question, his intent to kill both Roberson and Allison.

### 2.—Same—Evidence—Declarations of Accused—Admissible.

Statements made by appellant to the witness Mrs. Detro, the railroad agent, upon his leaving his home town on Friday, before the killing, which occurred on Sunday following, were properly admitted. Such declarations disclosed his destination, and were explanatory of his purpose. Whether it was a threat, seems not determinative of its admissibility.

### 3.—Same—Evidence—Motive.

The admission of several indictment pending against appellant and Ross, in several counties for the theft of cattle, which had been procured through the activities of deceased and Allison, was not error; such indictments being admissible to show motive, and not intent.

### 4.—Same—Argument of Counsel—Cured by Proper Instructions.

Several objections were made by appellant to statements made by counsel for the state in their arguments to the jury. The court sustained each ob-

jection as made and instructed the jury not to consider, nor be influenced by same, both orally and in writing. The statements were not of so damaging a character that the charge of the court could not eliminate their effect, and no injury is shown to have been done to appellant.

### 5.—Same—Charge of Court—Manslaughter—Word "enraged."

In affirmatively submitting the issue of manslaughter, the court used the word, "enraged." The court also gave a correct definition of manslaughter, and adequate cause. The use of the word "enraged" in the connection shown in the present case, did no violence to the rights of the appellant. Art. 743, C. C. P., directs that cases shall not be reversed for a fault in the charge not calculated to injure the rights of the accused, unless it appears that his trial was not fair and impartial.

Appeal from the District Court of Taylor County. Tried below before the Hon. W. R. Ely, Judge.

Appeal from a conviction of murder; penalty, twenty-five years in the penitentiary.

*W. H. Bledsoe, Geo. Lockhart,* and *Cunningham & Oliver,* for appellant.

*Dayton Moses, Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The appeal is from a judgment condemning the appellant to confinement in the penitentiary for a period of twenty-five years for the murder of H. L. Roberson.

While sitting in the lobby of a hotel situated in Seminole, Gaines County, Texas, on the night of April 1, 1923, H. L. Roberson and W. D. Allison were shot and killed. Besides Allison and Roberson there were several other persons in the lobby of the hotel. The hotel was a small wooden building, fronting north. There was one front door about the center of the building and a window on each side of it. A porch or gallery extended across the entire front of the building. A partition divided the front space in the building, leaving the lobby on the west side, into which entry was made by the door mentioned. On the southwest corner of the lobby was a stairway leading to the second story of the building. From the lobby there were doors entering into the wash-room, bed-room and dining-room.

According to the State's testimony, the appellant Good and Tom Ross entered the hotel lobby by the front door and shot and killed both Roberson and Allison. If the testimony of the State's witnesses is accepted as true, both Roberson and Allison were killed without having made any demonstration.

According to the appellant's testimony, he resided at Brownfield, from which point he traveled by rail about twenty-eight miles to Seagraves (the terminus of the railroad), his object being to

purchase some cattle. At Seagraves, by accident, he fell in with Tom Ross. He accepted the invitation of Ross to go to his home and inspect some cattle. He left Brownfield on Friday and spent that night at the home of Ross. Part of Saturday and Sunday was spent in company with Ross, and on Sunday they went together to Seminole, about twenty-five miles distant, in Ross' car. In the car and in the possession of the appellant and Ross were two rifles, an automatic shotgun, two pistols, and a quantity of ammunition suitable for these various weapons. The car was stopped near the front of the hotel at Seminole. The appellant, intending to spend the night at the hotel, picked up his shotgun and suitcase and walked on the porch. Ross was in his company and in front of him. As he approached, he saw Mr. Lockhart in the building. Touching the shooting we quote from the appellant's testimony the following excerpts:

"The next man I saw was Mr. Allison. He was sitting southwest, facing the door. As he began rising up out of his chair with his hand on his hip, I said, 'Look out for Allison.' * * * I said it in an ordinary tone of voice.

"Allison came up with his hand on his hip. I saw Allison standing to the right of Tom and then was when I shot him. I began shooting and I was shooting from the waist. I shot him from the side with the gun down. I just raised it up there and I shot him here (indicating), and Tom was shooting to the right.

"I glanced back that way and I saw Roberson and I fired twice with the shotgun in his direction.

"When I looked around there the best I could tell, Roberson's left hand was down on his leg, near his waistline here. * * * I did not see the gun. I just saw his hand in that position. That is the reason I shot him. Then, afterwards, I saw Mr. Allison on the floor. He fell on the floor. * * * After that I thought I saw him move and shot at him one more time.

"My purpose in going to the hotel was to spend the night, and I supposed Mr. Ross was going there for the same reason. I did not know what he was going to do. I was intending to look at a pony about four miles east of Seminole, and then go down to Dawson county."

According to the appellant's testimony, he had received information that both Allison and Roberson had killed several men; that they carried arms; that they were dangerous men; that they had made threats against the appellant's life and that of Ross; also to send them to the penitentiary.

Antecedent to the present trial, the appellant had been tried in Lubbock County for the murder of Allison. A verdict of guilty had been rendered from which he had perfected an appeal which was pending at the time of the present trial. Preliminary to the trial, he presented to the court in writing a motion in which he

made known the facts just above recited and insisted that his conviction for the murder of Allison precluded the State from maintaining the prosecution for the murder of Roberson for the reason that the death of both Roberson and Allison constituted but one transaction and that in trying the appellant for the murder of Allison, the State had carved and thereby exhausted its right of further prosecuting the appellant. Upon this motion, evidence was heard by the court showing the appellant's indictment and trial for the murder of Allison, the verdict of the jury and the pending appeal. The relief sought in the motion was that the present prosecution be postponed until the final action of the Court of Criminal Appeals upon the prosecution growing out of the death of Allison. The motion was overruled by the court.

Exception was reserved to the action of the court in refusing to postpone and is brought forward for review by bill of exceptions. The matter was also urged in the motion for new trial, which the court, in the light of the evidence before him, overruled. In our judgment, in making the ruling mentioned the learned trial judge committed no error. The principle of law of which the invocation is attempted is that which denies the State the right to maintain two prosecutions against one for his single act by which he slays two persons with no intent or volition to kill but one. This law is stated in Rucker's case, 7 Texas Crim. App., 551, and has been applied in Spannell v. State, 83 Texas Crim. Rep., 423; 18 Amer. Law Rep., 919, note; and several other cases cited in that opinion. In one of the cases cited it is said:

"The true test in such case must be, that if the intent to kill the one is an intention formed and existing distinct from and independent of the intention to kill the other, the two acts can not constitute a single offense. Ashton v. State, 31 Texas Crim. Rep., 482."

In the present case, the volition of the appellant to kill both Allison and Roberson is made clear by the testimony of both the State and the appellant. Appellant's own testimony does not leave in doubt or subject to question his intent to kill both Roberson and Allison. He was an actor in both homicides, which were brought about by shots fired by him as well as by Ross. The controversy between him and the State is not that by separate acts and independent intent he took part in the killing of both, but whether in so doing he was justifiable.

Upon appellant's leaving his home town on Friday before the homicide on Sunday evening, he had, according to the witness Detro, a conversation with her, the admission of which in evidence is made the subject of complaint. The part of the conversation to which the appellant objected is that in which he said that *he was "rearing" to go to Seminole where he expected to whip somebody or get whipped.* In approving the bill of exceptions, the trial judge appended the

stenographer's notes, from which it appears that the witness Detro was the railroad agent at Brownfield; that the terminus of the road was at Seagraves, twenty-eight miles distant; that on Friday afternoon about four o'clock, appellant came to the depot and there had with the witness a conversation, which we here reproduce:

"Whereto today," and he pointed over his shoulder and says, 'Just as far this way as you can sell me; just as far this way as I can go.'

"When he pointed over his shoulder he pointed south.

"I said, 'Just for that, I will sell you to Seminole,' and he says:

"You can't please me any better lady. That's where I am going, and I am rearing to get there."

"Then I says, 'Well, you are just going down there to whip somebody, are you?' and he says,

" 'Yes, or get whipped,' and I says,

" 'Well, just going down there looking for trouble then,' and he says,

" 'Well, I do not know but that I am.' "

"When he answered the first question the tone of his voice had the appearance of joking, and then it had the appearance of being serious."

In opening its case, the State introduced evidence to the effect that Good and Ross appeared at the hotel at the same time, began shooting immediately and killed both Allison and Roberson; that neither Allison nor Roberson made any hostile demonstration at the time; that both the decedents were inspectors for the Cattle Raisers' Association; that in the performance of their duties, Allison and Roberson had made investigations relating to cattle thefts in that section of the country; that they had investigated the theft of several hundred head of cattle. These matters were before the grand jury in the counties of Dawson, Lynn, Terry, and Hockley, and both of the decedents were witnesses. Indictments were found against the appellant for the theft of cattle upon some of these investigations. Roberson had investigated the theft of cattle by Tom Ross in Gaines County, Texas, and in Lee County, New Mexico. On the day before they were killed, both the decedents had conferred with the district attorney in the presence of each other and in the hotel in which they were killed. The grand jury was to convene on the following day. Certified copies of indictments returned against the appellant to the grand juries in the counties mentioned for the theft of cattle were introduced by the State, also an indictment returned by the grand jury of Lee County, New Mexico, against Tom Ross and others for the theft cattle. These indictments were presented in the year 1922. Roberson had investigated the matter before the indictments were filed. There had been no trial on any of the indictments. Some of the cases had been continued upon the application of the accused, others for the

want of sufficient time after filing, and others by reason of the disqualification of the judge who had been counsel for the appellant.

At the time the declarations were made to Mrs. Detro, the appellant Good was starting on the journey which ended at the place where the decedents were killed. His friendly relations with Ross were in evidence. The fact that Ross was his companion at the time of the homicide and that both he and Ross had grievances against the decedents by reason of their activities with reference to the indictments mentioned, were matters before the court. The declaration complained of was explanatory of his purpose. Whether it was a threat seems not determinative of its admissibility. It was a declaration accompanying the act of starting upon the mission mentioned and seems to come within the class of testimony, the receipt of which has often found sanction by the courts and text-writers. See Underhill on Crim. Ev., 3rd Ed., Sec. 510; Wigmore on Ev., Vol. 1, Sec. 102; Wigmore on Ev., Vol. 3, p. 2222; Ex Parte Blumer, 27 Texas Rep., 734.

The propriety of the receipt in evidence of the indictments is challenged upon the ground that their receipt could be justified alone upon the view that they illustrated the intent of the appellant and that his intent being obvious, the indictments were gratuitously and unnecessarily introduced. The learned counsel have elaborated this proposition with remarks, and in support of it, have cited many decisions. It may be conceded that it was the intent of the appellant and Ross to kill the deceased and Allison, but it was the right of the State to prove the motive which inspired the intent. The theory of the appellant, advanced by his testimony, was that the intent to kill Allison and Roberson arose from the apparent necessity of defending his own life and that of Ross. That the State might combat or anticipate this theory by legitimate evidence of motive and ill-will seems uncontrovertible, both on principle and authority. To establish the motive of one accused of homicide to take the life of another that the deceased was an actor in the maintaining of some judicial proceeding against the accused, pending or soon to begin, has often been asserted, and we have found no authority to the contrary. The cases of Johnson v. State, 29 Texas Crim. App. 150; Taylor v. State, 77 Texas Crim. Rep., 632; Porch v. State, 50 Texas Crim. Rep., 335, seem directly in point, as do many others collated by Mr. Underhill in his work on Crim. Ev., 3rd Ed., Sec. 503, note 84. Nor do we understand that under the facts revealed by the present record there would be a distinction between the hostilities or activities of Ross towards the decedents and those of the appellant. Upon adequate evidence the court instructed the jury upon the law of conspiracy and the law of principals. Ross and the appellant having acted in concert in committing the homicide, all the facts and cir-

98 Tex. Crim.—36.

cumstances which preceded and connectedly led up to it were relevant. Wharton's Crim. Ev., Vol. 2, p. 1732; Hays v. State, 90 Texas Crim. Rep., 195, and cases cited. That Allison and Roberson were enemies of the appellant and Ross was a part of the defensive theory. Their expression, indicative of hostility and accusing the appellant and Ross of crime, were a part of the evidence. Appellant was cognizant of the activities of the decedents in bringing about the indictments of himself and Ross. The two were together for two days before the homicide and on previous occasions. It was from the home of Ross that they came in his car to the place where they killed the decedents, bringing with them the weapons used. Considering this concert of action, proof by circumstances or otherwise that the activities of Roberson or Allison had contributed in causing the indictment of either the appellant or Ross or both was in our opinion, properly available to the State as original evidence. Especially was it relevant to meet the defensive theories. We understand that there, as in the present case, proof showing that the decedents were witnesses against the appellant and Ross and that their activities had contributed to the bringing of indictments against them, generally speaking, it is not incumbent upon the court to give an instruction limiting the purposes for which the indictments are introduced in evidence. Illustrations of this principle are found in Harrelson v. State, 132 S. W. Rep., 783; Thornley v. State, 36 Texas Crim. Rep., 118; Hall v. State, 31 Texas Crim. Rep., 565; Hudson v. State, 13 S. W. Rep., 388; Kunde v. State, 22 Texas Crim. App., 65; Davidson v. State, 22 Texas Crim. App., 373; Branch's Ann. Tex. P. C., p. 1047. No probability of the misuse of such evidence is perceived in the present record. See companion case of Ross v. State, No. 8609.

The indictment against Ross found in Lee County, New Mexico, was, under the evidence, properly received upon the issue of motive. The motives which actuated Ross, as well as those which actuated the appellant, were proper subjects of inquiry for the reason that there was evidence of a conspiracy fortified by the fact that in committing the homicide they acted together. Moreover, from the bill as qualified and the evidence in the case, we understand that the cattle involved in the indictment belonged to Mrs. Wilhoit, and involved cattle taken both in Gaines County (which borders on New Mexico) and in New Mexico, and that it was because of the offenses committed in Gaines County, Texas, that Roberson and Allison were present at the time of the homicide.

In Bills of Exception Nos. 8 and 9, there is complaint of argument attributed to the attorney for the prosecution. These bills were addressed to expressions to the effect that the Cattle Raisers' Associated was hated by cow thieves because of its activities in protecting cattle from thieves, and was also hated by some lawyers. These bills

are qualified by the judge's statement that the appellant's counsel denounced the Cattle Raisers' Association in their argument, and throughout the trial in an astute and ingenious manner before the jury sought to bring said association into bad favor. It also appears that the court instructed the jury to disregard the remarks. Ordinarily, an argument which is invited by the remarks of the opposing counsel, as seems to be the case in the present instance, will not warrant a reversal. The remarks, moreover, are not deemed so harmful as to preclude the nullification of their effect by the charge of the court withdrawing them.

The State's counsel in argument said:

"Gentlemen: In the herd of cattle in defendant's possession there were cattle belonging to Phelps, White, Ross, Renfro, and other persons than defendant; and said cattle were stolen cattle and defendant knew he would soon have to go to the penitentiary for stealing said cattle."

To the use of this language the objection urged, as shown by the bill is, in substance, that it is without evidence to support it. We find in the bill no certification by the trial judge that the remarks were not based upon testimony or proper inference therefrom. Attached to the bill by way of qualification is an extended recital from the record, a reproduction of which in this opinion is neither expedient nor necessary. Suffice it to say that in the light of the record, this court is not able to determine nor to express the opinion that in making the remarks counsel for the State transcended the bounds of legitimate argument.

Counsel for the prosecution, in his argument to the jury, said:

"The wife of the deceased Roberson had something of dread on her mind at the time she heard the shooting that killed her husband and would have told you about it but defendant's lawyers objected and kept her from telling it."

Upon objection to this argument the court, both verbally and in writing, instructed the jury to disregard the remarks. The record shows that the wife of the deceased Roberson was a witness in the case; that she was present in the hotel at the time of the homicide; that at the time her husband was killed she had retired, but upon hearing the shooting came down the stairway and fired at the assailants of her husband and Allison. That part of the argument quoted which makes reference to the fact that the lawyers of the appellant had kept her from telling what was on her mind was not proper argument. The court so instructed the jury. In view of the instruction and the record before us, the nature of the improper remarks was such that its ill effect might be obviated by the action taken by the court.

The court instructed the jury upon the law of manslaughter as well as upon the law of murder and self-defense. That phase of the charge submitting manslaughter is criticised as unduly restrictive of the rights

of the accused. The criticism grows out of the use of the word "enraged" as embraced in the eleventh paragraph of the charge, in which this language is used:

"* * * and if you believe from the evidence that at the time of the meeting of God and Roberson and at the time of the killing of Roberson, that the mind of Milt Good was so *enraged,* either from fright, anger, fear or sudden resentment, or terror, as to render his mind incapable of cool reflection; then you are instructed that you cannot convict the defendant of any offense higher than manslaughter, and if you have a reasonable doubt as to such condition of the defendant's mind at the time of the killing you cannot convict him of any offense higher than that of manslaughter."

In defining manslaughter the court instructed the jury that it consisted of a homicide committed under the influence of sudden passion arising from an adequate cause, the passion intended being either anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection; that by the term "adequate cause" is meant such cause as would ordinarily produce anger, rage, sudden resentment or terror in a person of ordinary temperament, sufficient to render the mind incapable of cool reflection. The jury was also told that any circumstance or combination of circumstances, taken either alone or together, capable of creating in the mind of a person of ordinary temperament and which does, in fact, create in the mind of the accused such passion as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, would be deemed adequate cause.

In the twelfth paragraph of the court's charge to the jury this language is used:

"* * * but at the time the defendant, Milt Good, was by some adequate cause removed to such a degree of anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection, etc."

In Paragraph 12-a of the charge the court used the words:

"* * * by some adequate cause, as that term is herein defined, under the immediate influence of sudden passion, arising from rage, fright, terror or sudden resentment, taking into consideration all of the relevant facts and circumstances in evidence and the previous declarations."

In defining manslaughter the statute uses the words, "* * * under the immediate influence of sudden passion arising from an adequate cause," and declares that the passion intended is "either of the emotions of the mind, known as anger, rage, sudden resentment, or terror, rendering the mind incapable of cool reflection." See Arts. 1128 and 1129 of the Penal Code.

The only departure from the approved precedents is that embraced in the quotation from the charge wherein the court uses the words, "that the mind of Milt Good was so *enraged* either from fright, anger, fear, or sudden resentment, or terror, as to render his mind incapable of

cool reflection." The leading case on the subject, relied upon by the appellant, is Eanes v. State, 10 Texas Crim. App., 47, a case in which the adequate cause relied upon was insulting words to a female relative. The court held, having reference to that element of the statute, that it was not proper to instruct the jury that the provocation must arise at the time of the commission of the offense. This has been regarded as sound and has been constantly followed. See Rose's Notes on Texas Rep., Vol. 5, p. 185; Squyres v. State, 92 Texas Crim. Rep., 161. In the Eanes case, supra, the jury was instructed that the homicide must take place under "a sudden *transport* of passion." The interpolation of the word "transport" not used in the statute, was held erroneous, and in discussing the matter, by way of dicta, the court called attention to the fact that the words *rage* and *anger* as used in the statute were not entirely synonymous. In holding that the word "transport" was over-restrictive, the case of Eanes v. State, supra, was followed in several decisions of this court which are cited by the appellant, among them being Kannmacher v. State, 51 Texas Crim. Rep., 118. The view that the use of the words "sudden transport of passion" in lieu of the statutory "sudden passion" was abandoned in Waters v. State, 54 Texas Crim. Rep., 323, and the rule there stated has since been followed. One of the late subsequent expressions of the court in which the authorities are collated will be found in the opinion of Presiding Judge Davidson in Thomas v. State, 159 S. W. Rep., 1183. In Webster's New International Dictionary, published in the year 1920, among the synonyms given for "anger" are "rage, furry, * * * in expressing the feelings aroused by wrong or injury." Both anger and rage are used in our statute, and may not in the complete sense convey the same idea. They are closely related, however, and in view of the reasoning expressed in the Thomas case, supra, and others cited therein, we are led to conclude that the use of the word "enrage" in the connection shown in the present case did no violence to the rights of the appellant. We are commanded by Art. 743, C. C. P., to refrain from reversing the judgment of conviction for a fault in the charge not calculated to injure the rights of the accused unless it appear that his trial was not fair and impartial.

It seems manifest in the present case that the charge in question clearly informed the jury that no more was required to reduce the offense to manslaughter than that the mind of the accused be rendered incapable of cool reflection by one of the emotions of the mind named in the statute, considered in the light of all the surrounding circumstances.

The evidence leaves no room for doubt that the appellant took part in the slaying of the deceased. The jury guided by sufficient instructions, having found against the appellant, his defensive theory of justifiable homicide and the theory that the act was done under the influence of a sudden passion superinduced by an adequate cause, the

questions of law urged against the legality and fairness of the trial are not deemed sound; the verdict of the jury, therefore, fixing the grade of the offense and assessing the penalty is binding upon this court.

The judgment is affirmed.

*Affirmed.*

## ON REHEARING.

LATTIMORE, Judge.—Appellant renews complaint of the refusal of his motion to postpone or continue this case until his appeal from conviction for the killing of one Allison, could be decided by this court. Such motion should not only so allege as to make it plain that in law and fact the act and transaction for which he has been convicted, and that which forms the basis of the present prosecution, are one and the same,—but when the application is traversed by the State, as was done in this case, it must appear from the facts then heard, or from the testimony as it appeared on the trial, that the act for which the former conviction was had and that upon which the present prosecution is based, were and are the same act, transaction and offense in the eyes of the law. No facts seem to have been heard by the learned trial judge when the motion to postpone was overruled. The record before us does not seem to bear out the contention that the offenses are the same. Appellant's own testimony makes clear the proposition that upon entry into the room in which Allison and Roberson were, he shot Allison and then turned and shot Roberson. We know of no rule either of statute or decision under which the killing of Mr. Allison could be held in law to be one and the same transaction, act or offense as the killing of Roberson, and hence it follows that we are not led to believe that appellant might successfully plead jeopardy or conviction in this trial, even if his first conviction had been affirmed by this court.

The only grounds in the motion relate to our opinion upholding the action of the trial court in regard to arguments made by attorneys for the prosecution. These have been reviewed and are believed to be proper under the facts and the qualifications made by the trial court to the bills of exception. Nor do we believe the exception to the charge on manslaughter, also further complained of, to present any error, and conclude that the case was properly decided upon original presentation.

The motion for rehearing will be overruled.

*Overruled.*