## J. A. BONNER, ALIAS J. A. JOHNSON v. THE STATE.

### No. 603.   Decided May 18, 1910.

**Theft of Cattle—Ownership—Possession.**

Where, upon trial of theft of cattle, the evidence was not ·clear whether the party whom the alleged owner left in charge of the cattle had abandoned his contract during the actual owner's absence, the court erred in not submitting this phase of ·evidence to the jury, the possession having been alleged in the actual owner, and the evidence showing that he left the actual control of the cattle to an agent.

Appeal from the District Court of Wheeler. Tried below before the Honorable F. P. Greever.

Appeal from a conviction of theft of cattle; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Willis & Willis,* and *L. D. Miller,* for appellant.—On question of possession: Bonner v. State, 125 S. W. Rep., 22; Honea v. State, 56 Texas Crim. Rep., 278, 119 S. W. Rep., 851; Bailey v. State, 20 Texas Crim. App., 68.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the second appeal of this case. At the last trial, which was had in the District Court of Wheeler County on March 22d of this year, appellant was found guilty, and his punishment assessed at confinement in the penitentiary for a term of three years. The former opinion of this court will be found in 58 Texas Crim. Rep., 195, 125 S. W. Rep., 22.

The facts of the case are not essentially different from those appearing on the former trial except on the last trial the witness Newlin was introduced as a witness by the State. That Harrington left this property in charge of Newlin is shown by the testimony of both these parties. Newlin states, however, that he told Mr. Harrington at the time if business got better that he might have to return to and look after his livery business. This contract was made during the panic and he states that after he made the trade with Mr. Harrington that business did improve. He also states that he had not been on the ranch for about three days before the cattle were stolen. That he had been given such authority over these cattle as clothed him with possession of same under the law can not be doubted. In his testimony is found a general statement to the effect that he was not managing them or handling them or controlling them at the time they were taken away, but the evidence shows that Harrington was in Oklahoma; that Newlin had secured nobody else to look after the cattle, that Harrington has not done so, and that Newlin had not advised Harrington of the termination of his charge or his abandonment of his employment. He says, among other things: "If I had seen any one there driving the cattle off I would have felt that under my employment I had the right to go and stop them; I would have felt that it was my duty to see whether or not they had permission to drive them off. I suppose that I had permission from Mr. Harrington to give them that much care. I suppose that I had authority to take them from any one that I saw driving them off." It is shown by the evidence there was plenty of water and grass in the pasture, and it appears that the main duty of Newlin was to count

the cattle and keep them in the pasture, and return them to the pasture if they escaped. Mr. Harrington says: "When I left there and left these instructions with Newlin I expected that some of the cattle would get out; that was the reason I knew it was important to have some one there to see after them. I left him there to look after the cattle until I got back there." He says further: "If he saw any one driving off the cattle, I, of course, expected him to get them and put them back in there." The evidence further shows that the pasture in question belonged to Newlin's mother. It incidentally appears, at least is a fair inference from the evidence, that Newlin telephoned Harrington of the loss of the cattle, and it directly shows that he met him at the depot when he came from Oklahoma.

As we read this testimony, it seems to us not to be quite clear whether or not there had been an entire abandonment of the possession of these cattle by Newlin so as a matter of law to reinvest the possession in Harrington. We do not think it can be said, in the light of the entire record, that the evidence conclusively shows that there had been an entire and complete abandonment by Newlin of his contract with Harrington, or such an entire and complete abandonment of possession of the cattle as would have justified the court in declining to submit to the jury the question and issue of Newlin's possession. Evidently, to meet this view of the case, appellant requested the court to give in charge to the jury the following: "Possession of the person so unlawfully deprived of property is constituted by the exercise of actual control, care or management of the property, and you are therefore instructed that if you find from the evidence that at the time the cattle were taken from a pasture in Wheeler County, Texas, from the possession of Robert Newlin, bearing in mind the foregoing definition you will acquit the defendant and say by your verdict not guilty." The evidence shows that Newlin had not been very diligent about his employment, but it seems to us doubtful, at least the facts raise an issue as to whether there had been such change or discontinuance of his relations to the property as would end his employment or terminate his control over the cattle. It should be stated further that there were two counts in the indictment, the first of which alleged possession of the property in Harrington, and that this count and this alone was submitted to the jury, and forms the basis of the conviction. Under the evidence we think the special charge above requested should, in substance at least, have been given. The general question was so thoroughly and exhaustively discussed by Judge McCord in an able opinion on the former appeal, where the authorities are collated and cited, that we deem it unnecessary to further elaborate the question.

For the error pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*