REAGAN PETITTE V. THE STATE.

No. 12648. Delivered June 12, 1929.
Rehearing denied State November 13, 1929.

348

The opinion states the case.

*J. D. Pickett* of Palestine, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for 15 years.

It appears that the trial took place before a special judge. The statute requires that before a special judge shall enter upon his duties he shall take the oath of office required by the Constitution, and his selection and the fact that the oath of office has been administered to him shall be entered upon the minutes of the court as part of the record in the cause. Articles 555 and 556 C. C. P. No oath of office is embraced in the transcript. That it is essential that the oath of office be taken and that the record reveal it is the announcement of the decisions of this court. Sewell v. State, 299 S. W. 549; McLemore v. State, 296 S. W. 552; Blanks v. State, 288 S. W. 452; Harris v. State, 288 S. W. 450; Norman v. State, 277 S. W. 127; Salazar v. State, 276 S. W. 1105; Dawes v. State, 222 S. W. 560; Reed v. State, 114 S. W. 834; Weatherford v. State, 28 S. W. 814; Smith v. State, 6 S. W. 40.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—This case was reversed upon the sole ground that the record failed to disclose the election and proper qualification of the special judge who tried the case. Attached to

the State's motion for rehearing is a duly certified copy of the minutes of the trial court showing that said special judge was duly elected and qualified, hence the judgment of reversal upon the above ground should not stand.

The facts show that appellant shot deceased and one Cornwell on the same occasion, from the effects of which shooting deceased died at once, but Cornwell recovered and testified as a witness for the State. He said in substance that he and deceased were at work and that appellant walked up to them and both of them spoke to him, whereupon appellant made an inquiry of deceased as to how many of their hogs he had killed. Deceased replied to the inquiry, and then directed appellant to go on away and leave them alone. Mr. Cornwell testified that at this juncture appellant raised his gun and fired at deceased who was doing nothing to him and had no weapon, and had made no threat or threatening gesture. He further testified that after shooting deceased appellant started to run away but turned and fired at witness a distance of some thirty-five yards. Witness was wounded by the shot. The facts show that appellant used a single-barrel shot gun, and that the shells used by him in shooting were loaded with No. 5 shot. It appears from the record that as appellant was going up the road towards the home of deceased he passed some persons, and the complaint in bills of exception Nos. 1 and 2 is of the rejection of testimony of two of these people to the effect that appellant told them he was out hunting birds. We see no harm resulting from the refusal of this testimony. Appellant testified that he was out hunting birds, but admitted that he used No. 5 shot in shooting deceased and Cornwell, and further admitted that he had never shot birds before with No. 5 shot.

There is complaint in bill of exceptions No. 3 of the rejection of the testimony of a Mr. Dillard who lived about a half mile from the scene of the shooting, as to what appellant told him when he came by Dillard's place after the killing. The exact length of time is not shown, but we observe from the appellant's testimony that he says he ran and trotted all the way from the place where the shooting took place to where he saw and talked to witness Dillard. The bill of exceptions sets out that Mr. Dillard saw the defendant walking down the road rapidly and acting strangely and that without stopping or changing his gait defendant made certain statements to the witness. As part of said statement the defendant sought to have Mr. Dillard state as follows: "That the defendant said that

him and Bill Abbey and the Cornwell boy had a little shooting scrape up there, and that Bill Abbey started to shoot him, and that defendant shot at Bill Abbey and he fell, and that the Cornwell boy started to shoot at the defendant and defendant shot at Cornwell; that the defendant said he did not know whether he had killed either one of them or not, and he wished Dillard would go up there and see about them." In this connection we note the complaint evidenced by bill of exceptions No. 4, from which we are apprised that appellant sought to prove by J. E. Black that he was about four hundred yards from the scene of the shooting and heard the shots, and that soon afterward appellant came down the road and that the following conversation took place:

"He said: 'Good evening Mr. Black.' I said: 'You bird hunting?' Reagan said: 'Yes, I think I got a couple of them up the road.' I said: 'What, you boys been exchanging shots up there?' He said: 'Yes I shot two of them down, I may have killed them, I don't know, I don't care, they were trying to kill me.' Said: 'You better go up and see about them.' That was all he said."

Both the testimony of Mr. Dillard and that of Mr. Black appear admissible under the rule of res gestae. The trial court rejected that of Mr. Black because of an opinion expressed by the witness when examined by the court out of the presence and hearing of the jury, to the effect that appellant appeared to be cool and collected when the statement was made. Mr. Black admitted that he was not well acquainted with the appellant, and in fact had more conversation with him that day than he had had all the rest of their lives together. Mr. Dillard expressed no opinion as to whether the appellant was cool and collected or otherwise. While there is nothing in the record showing how long it took appellant to go the quarter of a mile from where he shot Abbey to where he talked to Black, nor as to how long it took him to go from where the shooting occurred, one half mile, to where he talked to Mr. Dillard, still it would be only fair, since the record shows he went at once from the scene of the shooting to where he talked to these witnesses, to conclude that it could not have been but a few minutes until he had talked to both of them.

Appellant testified that he was out bird hunting when he came to where Abbey and Cornwell were, and had a single-barrel shot gun; that after a few words passed Abbey pulled a pistol out of his hip pocket and a scabbard came out of Abbey's pocket with the pistol, and that believing Abbey was about to kill him he shot Abbey,

and as he started away Cornwell picked up the pistol and appellant then fired at Cornwell. It was shown by other testimony that a scabbard was lying upon the ground not far from the body of Abbey after the shooting. Mr. Cornwell and the wife of deceased were eyewitnesses, and both testified for the State. Appellant was his own only eyewitness.

It is recognized that no hard and fast rule can be laid down governing the admission of testimony under the rule of res gestae, but it is difficult to imagine a case where a boy of the kind and character shown by the record, to be that of appellant, could shoot a man and be so cool, calm and collected in from ten to fifteen minutes thereafter as that his statements concerning the killing would not be admissible under said rule. He claimed to both Mr. Dillard and Black that he had to do this shooting as Abbey was trying to kill him. We think he was entitled to have the facts put before the jury as to what he said. We are of opinion the court erred in rejecting the testimony.

We find no error in either of the other bills of exception, but for the error complained of the case would have of necessity been re-. versed. That order having already been entered, the motion for rehearing by the State will be overruled.

*Overruled.*