CLIFFORD BOYD v. THE STATE.

No. 14650. Delivered February 24, 1932.
States Rehearing Denied May 4, 1932.
Reported in 49 S. W. (2d) 466.

*A. B. Geppert,* of Teague, and *Williford & Williford,* of Fairfield, for appellant.

*Richard & A. P. Mays,* of Corsicana, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for two years.

It appears that the trial took place before a special judge. The statute requires that before a special judge shall enter upon his duties, he shall take the oath of office required by the Constitution, and his selection and the fact that the oath of office has been administered to him shall be entered upon the minutes of the court as part of the record in the cause. Articles 555 and 556, C. C. P. No oath of office is embraced in the transcript. That it is essential that the oath of office be taken and that the record reveal it is the announcement of the decisions of this court. Petitte v. State, 113 Texas Crim. Rep., 347, 21 S. W. (2d) 522, and authorities cited; Khan v. State, 115 Texas Crim. Rep., 92, 30 S. W. (2d) 329; Mims v. State, 112 Texas Crim. Rept., 176, 15 S. W. (2d) 628.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals· and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—This case was reversed on account of the fact that the transcript failed to show that the special judge before whom the case was tried took the oath of office. This defect has been cured, and the appeal will now be considered on its merits.

The indictment charged the theft by appellant of one head of cattle from R. F. Riley. Mr. Riley testified in substance as follows: He owned about seventy head of cattle, among them a cow having a calf four months old, weighing about 350 pounds on foot. This calf was a graded white-faced Hereford. Riley's cattle were in a pasture some distance from town. About the first of January, 1931, it was observed that the

calf was missing. An investigation disclosed some blood on the ground about 300 yards from the home of Sonny Dobbins. A tree near this blood indicated that it had been bruised by ropes.

According to the testimony of Riley, after his unsuccessful search for his animal in various places, he made inquiry of the appellant, who was an employee in a meat market, and was told by him that he had not seen the animal described by Riley. There was testimony that Sonny Dobbins had cashed a check for $5 executed by Herman Adamson at Phillips Cafe while the appellant was present and aided in getting the check cashed. Hides in the market were examined by Riley without discovering any trace of the lost animal. Sonny Dobbins made a deed to Riley for a tract of land of the value of $50 in payment for the butchered animal.

Sonny Dobbins, the accomplice witness, testified for the state that the appellant and Herman Adamson came to his house at night in a truck; that they asked him to get his gun and come with them; that he complied with their request and went with the parties down into the pasture about 300 yards from his home; that they roped a calf and it ran around a tree, winding the rope around; that appellant stabbed the calf in the back of the head with a knife and then cut its throat; that Adamson gave him a check for $5 for helping load the animal in the truck; that they left in the truck with the animal. This witness gave testimony to the effect that the animal belonged to Mr. Riley, the injured party. He also testified to facts and circumstances tending to show that the appellant and Adamson knew that the animal belonged to Riley, and that they had no right to take it. Dobbins denied that he sold the animal to the parties or that he had any arrangement to sell it to them before they came to his house.

Sonny Dobbins' wife gave testimony to the effect that the appellant and Adamson came to the house and took Sonny Dobbins with them to the pasture. She testified further to hearing a cow bawling near the house after the parties left. She said that shortly after this the appellant and Adamson left in their truck.

Testifying in his own behalf, appellant admitted that he went to the place described by Sonny Dobbins and butchered a calf. He said, however, that he had theretofore made arrangements with Dobbins to purchase the animal from him, and that he did not know that it had been stolen. He declared that it was tied to a tree at the time he went to the house. He denied that he knew the animal belonged to Mr. Riley. He declared that he thought it was the property of Sonny Dobbins. He testified further that he carried the butchered animal to the market where he worked and placed the hide in the back of the market. He said the animal weighed about eighty-eight pounds. He said further that, after he was charged with the offense, he carried the hide of the animal to his father's house and kept it. Appellant produced this hide in court, saying that it was the hide which came off of the butchered animal claimed by

Mr. Riley. Other witnesses for the appellant corroborated his statement that the animal received in the market weighed about eighty-eight pounds.

In rebuttal, the state offered several witnesses who had examined the hid which the appellant produced in court. These witnesses testified, in substance, that it appeared that the animal from which this hide had been taken had been shot with a gun, and that there was no indication that it had been stabbed in the back of the head. Further, these witnesses were of the opinion that the hide did not come off of an animal of the description of Riley's calf. One witness for the state said: "This hide that was brought in here was not on the calf that Mr. Riley lost that Friday night."

Mr. Riley, in looking at the hide, said: "I have seen that hide that was brought in here before the jury. If that hide came off the yearling that Clifford Boyd bought, it is not the hide of the yearling I lost."

In applying the law to the facts, the court gave the following instructions: "Now, if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, in the county of Freestone, in the state of Texas, on or about the second day of January, A. D. 1931, as alleged, did fraudulently take from the possession of R. F. Riley the one cattle described in the indictment, without the consent of the said R. F. Riley, and with the intent to deprive the said R. F. Riley of the value of the said one cattle, and to appropriate the same to the use and benefit of him, the defendant; and if you further believe that the said R. F. Riley was at the time the owner of said one cattle, you will find the defendant guilty as charged and assess his punishment at confinement in the penitentiary for any term of years not less than two nor more than four years."

Appellant, in a timely manner, objected to the charge of the court on the ground that it did not affirmatively submit, from the standpoint of the appellant, the issue as to whether or not the one head of cattle mentioned in the indictment was the property of Riley; and, further, that in the charge hereinbefore quoted the jury were not required to believe beyond a reasonable doubt that the one head of cattle was the property of Riley. The charge which we have quoted is the only instruction on the question of ownership. Nowhere in the charge were the jury instructed, from the defendant's standpoint, that before they could convict appellant they must believe from the evidence, beyond a reasonable doubt, that the animal in question was the property of Riley, as charged in the indictment. The jury should have been instructed to return a verdict of not guilty unless they believed beyond a reasonable doubt that the animal belonged to Riley. The injured party testified, as heretofore shown, that if the hide exhibited in court by the appellant came off the animal bought from Sonny Dobbins, it was not his animal that had been butchered at the place described by Sonny Dobbins and appellant. He had lost no other animal, according to his testimony. Other witnesses for the state testified

that the hide did not correspond with the description of Mr. Riley's animal. Appellant asserted positively that the hide in question belonged to the animal he had bought from Sonny Dobbins. Sonny Dobbins testified that he would not say that the hide did not come off of the animal that was butchered near his place, but it did not look like it. Mr. Branch, in his Ann. Tex. P. C., sec. 2441, lays down the rule as follows: "Where the evidence of the identity of the alleged stolen property is uncertain, the court should give a charge requiring the jury to find beyond a reasonable doubt that the property in controversy was the property of the person alleged as owner."

Further, from the same section, the following is taken: "If there is a conflict in the evidence as to ownership, the court should charge the jury that the ownership must be proved beyond a reasonable doubt as alleged and if not that they should acquit."

There is a marked conflict in the evidence touching the identity of the animal possessed by the appellant and the animal lost by Riley. If the animal possessed by the appellant was not the animal owned by Riley, this conviction cannot stand, for the reason that ownership by Riley of the animal charged to have been stolen by the appellant is an essential element of the offense for which the appellant was indicted. The law seems well settled to the point that under such circumstances the jury, in an appropriate charge, should have been instructed to the effect that, as a predicate for the conviction of the appellant, the evidence must be such as to show, beyond a reasonable doubt, that the appellant stole the animal described and that it belonged to Riley; that, if it was not believed, beyond a reasonable doubt, that the appellant stole an animal belonging to Riley, an acquittal should result. The citations under the above quotations from Branch's Ann. Tex. P. C., are deemed to definitely illustrate the proposition just stated. Upon the subject, the following quotation is taken from the opinion of Judge White in the case of Robinson v. State, 5 Texas App., 519: "On this state of facts, the question naturally and squarely presented is, Was the beef which was killed by defendant the property of Mrs. Mahan, as alleged in the indictment? This was the prominent salient feature of the case as made by the proof. With regard to it, as we have seen, the testimony was directly conflicting. Such being the case, in our opinion the defendant was entitled to have the jury instructed, as part of the law applicable to the facts, that unless they were satisfied beyond a reasonable doubt that the ownership of the animal was in Mrs. Mahan, as charged, they should acquit."

See, also, Smith v. State, 7 Texas App., 382; Bonner v. State, 59 Texas Crim. Rep., 350, 128 S. W., 1102; Davis v. State, 68 Texas. Crim. Rep., 400, 152 S. W., 1094; Schenk v. State, 76 Texas Crim.. Rep., 235, 174 S. W., 357; Hunt v. State, 89 Texas Crim. Rep., 89,.

239 S. W., 869; Hunt v. State, 89 Texas Crim. Rep., 211, 230 S. W., 406.

While the court in the general charge, in applying the law to the facts from the state's standpoint, instructed the jury that they must believe that Mr. Riley owned the animal, the jury were not required to find, beyond a reasonable doubt, that such was the fact before they could convict. As heretofore stated, nowhere in the charge was the issue presented from the standpoint of the appellant.

Over proper objection, the wife of the accomplice, Sonny Dobbins, testified for the state. At the time she gave her testimony, the accomplice Sonny Dobbins had not testified. He was later called by the state, and gave testimony tending to show that he and the appellant were guilty of the offense of the theft of the animal in question. To sustain his contention that the matter presents error, the appellant relies upon the cases of Dill v. State, 1 Texas App., 278, and Ayres, v. State, 105 Texas Crim. Rep., 15, 284 S. W., 960. In Ayres v. State, supra, this court quoted from Dill v. State, supra, as follows: "The construction we put upon article 3113 is that it was never intended to so change the rules of the common law as to make her a competent witness to testify against other defendants upon trial with her husband, as in this case; for the article of the Code relied on says the husband and wife can in no case testify against each other, except in a criminal prosecution for an offense committed by one against the other. If her testimony was not competent at the time it was given, the *nolle prosequi* as to her husband did not remove the objections to it. After the *nolle prosequi* was entered, she might have been called to the stand as a witness for the state, and her testimony would have been admissible. But this was not done."

Disclaiming any intention to subscribe to the holding in Dill v. State, supra, it is suggested that there appears to have been no impediment to waiting until after the accomplice, Sonny Dobbins, testified before placing his wife on the stand. This would have obviated the question presented in this record.

The state's motion for rehearing is overruled.

*Overruled.*