## J. A. Davis v. State.

### No. 1988.　Decided January 15, 1913.

**1.—Theft—Charge of Court—Want of Consent.**

Where, upon trial of theft, the indictment charged ownership in one pers. and possession in another, and the court's charge on want of consent instructe the jury that if the alleged property was taken without the consent of them o either of them, the same was reversible error. Following Woods v. State, 26 Texas Crim. App., 490.

**2.—Same—Circumstantial Evidence—Alibi—Charge of Court.**

Where, upon trial of theft, there was evidence that the defendant was not present when the alleged stolen property was taken, but was at another and different place, and the defendant asked a charge upon alibi, the same should have been given, although the court charged on circumstantial evidence.

**3.—Same—Charge of Court—Original Taking—Explanation of Possession.**

Where, upon trial of theft of cotton, there was evidence that the defendant had no connection with the original taking and explained his possession by purchase from another, the court's failure to charge on these issues was reversible error, especially, where correct charges had been requested thereon.

**4.—Same—Charge of Court—Ownership—Imputing Crime to Another.**

Where, upon trial of theft, defendant's contention was that the State had failed to prove ownership in the party alleged and also explained his possession by purchase from another, the court should have submitted these issues to the jury, as well as, if the property was stolen by another than defendant to find him not guilty.

**5.—Same—Ownership—Charge of Court.**

Where, upon trial of theft of a bale of cotton, it became an issue whether the alleged cotton recovered from the possession of the defendant was that of the person alleged as owner in the indictment, the court should have submitted this issue to the jury, and a failure to do so was reversible error.

**6.—Same—Charge of Court—Exculpatory Evidence.**

Where, upon trial of theft of a bale of cotton, the State introduced the exculpatory statement of the defendant showing that he had no connection with the alleged theft, it was reversible error not to charge the jury that unless the State in some way disproved these matters, the defendant was entitled to an acquittal.

**7.—Same—Continuance—Admitting Truth of Absent Testimony.**

Where, upon trial of theft, the district attorney admitted the truth of the alleged absent testimony for which defendant asked a continuance, he cannot be permitted to controvert or contradict such admissions by introducing other testimony attempting to disprove said absent testimony.

**8.—Same—Evidence—Hearsay—Books.**

Where, upon trial of theft of a bale of cotton, the alleged owner attempted to identify the same principally by the weight and marks of said bale of cotton, and testified that he had the ginner's tickets with some weights, etc., which he had lost, he should not have been permitted to testify that the alleged stolen bale of cotton was not among those which he carried to market; as the books of the ginner was the best evidence.

**9.—Same—Evidence—Declarations of Third Party.**

Upon trial of theft of a bale of cotton, where the alleged owner could not identify the same, it was reversible error to admit testimony that he did so from certain gin tickets furnished him by the ginner which had since been lost, without proof of the fact that the original gin tickets were correct or showed a correct transcript from the ginner's books,

**10.—Same—Checks—Erasures.**

Where, upon trial of theft of a bale of cotton, the State introduced a check which defendant claimed he had given to the party from whom he purchased it, for the object of showing that it was bogus, claiming certain erasures thereon, it was error to permit a State's witness to testify as to certain changes and erasures on said check, as the check itself was the best evidence of its condition; the same having been taken away from the jury.

**11.—Same—Evidence—Declarations of Third Parties—Letter of Advice.**

Upon trial of theft of a bale of cotton, it was reversible error to admit in evidence a letter of advice and other written memorandum, with reference to certain bank transactions occurring between third parties with which defendant had no connection.

**12.—Same—Insufficiency of the Evidence—Charge of Court.**

Where, upon trial of theft of a bale of cotton, the property alleged to have been stolen was claimed to have been purchased by the defendant from a third party, and there was evidence that he was not present at the time of the original taking, and also a question as to the ownership of the alleged property, etc., and the charge of the court failed to apply the law correctly to the evidence, the conviction could not be sustained.

Appeal from the District Court of Floyd. Tried below before the Hon. L. S. Kinder.

Appeal from a conviction of theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Martin & Zimmermann,* for appellant.—On question of memoranda furnished by third parties: Howard v. State, 32 S. W. Rep., 544; Wade v. State, 35 S. W. Rep., 663.

On question of expert testimony as to erasures on check: Tyler v. State, 11 Texas Crim. App., 388; Knowle v. State, 55 Wis., 249; Davis v. State, 38 Md., 15; Com. v. Webster, 52 Am. Dec., 711.

As to admissions by State's counsel of absent testimony: Van Meter v. People, 60 Ill., 168; Vinegar v. Com., 42 S. W. Rep., 351; White's Penal Procedure, Sec. 639.

On question of insufficiency of the evidence: Wheeler v. State, 30 S. W. Rep., 913; Doss v. State, 13 S. W. Rep., 788; Jackson v. State, 80 S. W. Rep., 631; Burdett v. State, 51 Tex. Crim. Rep., 345; 101 S. W. Rep., 988.

As to court's charge on want of consent: Wood v. State, 10 S. W. Rep., 108; Jones v. State, 11 S. W. Rep., 830.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for theft of a bale of cotton over the value of fifty dollars, the punishment being assessed at two years confinement in the State penitentiary.

The State's contention is that the property belonged to L. L. Rogers. Appellant's contention is that it did not, and the State failed to show ownership in Rogers. The State's contention is the property was taken from the gin yard of a man named Tomson. The indictment alleges

ownership in Rogers and possession in Tomson. The theory of the State is, the bale of cotton was taken from Tomson's gin yard about the 10th or 11th of November, and was sold a day or two afterwards at Memphis in Hall County, the gin yard being in Briscoe County. The indictment was found in Briscoe County. Rogers testified that during the fall of 1909 he had several bales of cotton ginned at the Gasoline gin in Briscoe County, and also some ginned at the Turkey gin about nine miles distant from the other gin; "that on or about October 30, 1909, he rolled his cotton together and had at that time four bales in the yard at Gasoline and one in the press; that on November 27th thereafter one bale was missing, which, if taken by the defendant, must have been taken about the 10th or 11th of November, 1909." Upon an investigation of the matter the evidence is to the effect that about November 12th or 13th the defendant sold a bale of cotton in Memphis, about thirty miles distant, and the bale sold by him was marked in blue ink HLO 171 T, and that the bale of L. L. Rogers, when last seen, was branded LLR 134 T, the T being the gin brand and the remainder of the brand that of the owner. The alleged owner Rogers says he identified this cotton as being his from the fact that it was in weight within four pounds of his, which weight he got from the ginner, not having seen it weighed. The bale at the time of its inspection by Rogers did not show his brand or anything from which he could swear positively his brand had ever been placed on the bale of cotton. It was also shown by the State's evidence that appellant made a trip to Memphis with a bale of cotton about the time alleged in the indictment, and that at Turkey, on the road to Memphis, he purchased some bluing and gold dust powders, the theory of the State being that he made this purchase for the purpose of destroying the identity of the bale of cotton. The evidence on the part of appellant, which came from the State, consisting of questions and answers propounded to him on a former trial, showed that the bale of cotton was the property of one Henry Owens. (The name Owens is spelled differently, some places it is Owens and others Oyins.) Owens was a cotton picker in that vicinity, and defendant received $1.50 from him for hauling the cotton to Memphis, and paid Owens a check for the total amount of the cotton less the $1.50 for hauling. Appellant also shows through the witness Gist that the bale of cotton showed no evidence of having ever been washed, and that there were black specks all over the bale, caused probably from being rolled around so much. The testimony of the defendant placed before the jury by the State shows that he told the cotton buyer at the time he sold the cotton to him that it was not his cotton; that the cotton was not discovered by any one until some time in December following the alleged theft on November 11th. It is also contended that the bale of cotton was originally marked in black ink or some black substance, and the State sought to show that this had been washed out and the numbers put on in blue ink or some blue liquid. It is also shown that both gins, the one at Gasoline and

the other at Turkey, branded with the capital T, and that both some time branded with blue ink. The evidence discloses further that the bale of cotton alleged to have been lost by Rogers was different in weight from that discovered in Memphis where appellant sold the bale he did sell. Appellant's evidence, which was placed before the jury by the State, was a reproduction of that given by him on a former trial when it seems there was a hung jury. In this testimony was the statement by appellant that he sold the bale of cotton at Memphis as the property of Owens, for which he received pay, and subsequently paid Owens by giving him a check on the bank for it. This check was introduced in evidence. The State tried to meet this by showing the check had been originally given for a different amount, and after being paid was altered so as to conform to the amount that he received for the bale of cotton less the $1.50 for hauling it. Appellant's evidence as introduced by the State also shows he was not present at the time the cotton was taken, if it was taken, and had no connection with the original taking; that he had agreed to haul the bale of cotton for Owens, and that Owens in fact did turn it over to him, and that he hauled it. That the bale of cotton was not turned over to him at or near any gin but at a different place. The details of all this are thought unnecessary to be further stated.

Applying the law to the case the court charged the jury that if appellant fraudulently took from the possession of Tomson and Rogers, or the possession of either of them, the bale of cotton as described in the indictment, and that said bale of cotton was the property of the said L. L. Rogers, and taken without the consent of the said Tomson and Rogers, "or either of them," and with the intent to deprive the said Rogers of the value of the same and to appropriate it to the use and benefit of him, the said defendant, etc. Exception was taken to this charge because it authorized the jury to convict if the cotton was taken "without the consent of said Tomson and Rogers, or either of them." The point of objection is to the statement in the court's charge that the jury would be authorized to convict if he took the property without the consent of either of them, referring to Rogers and Tomson. This exception is well taken. The question has been adjudicated in a number of cases. Directly in point see Woods v. State, 26 Texas Crim. App. 490; Jones v. State, 28 Texas Crim. App. 42. Those cases support appellant's contention.

The court gave a charge on circumstantial evidence, but did not charge upon the theory of alibi, or upon the issue that if some other party took the property and appellant received it and sold it, knowing it to have been stolen at the time he received it, yet he could not be convicted unless he was present and participated as a principal in the transaction. The court also failed to charge with reference to the explanation and statements made by defendant and put in evidence by the State showing his want of connection with taking the cotton. The court also failed to charge that unless defendant was con-

nected with the original taking of the cotton, that he could not be convicted under the indictment charging theft. The court also failed to charge the jury that if they should find that Owens or some other person committed the theft and subsequently delivered the property to defendant, that they could not convict defendant of the theft. Exception was reserved to the charge for failing to give these phases of the law, and requested special instructions covering all of them were refused by the court. Appellant requested another special instruction which was also refused, to-wit: "Before you can find the defendant guilty in this case you must believe from the evidence beyond a reasonable doubt that the bale of cotton in controversy was the property of L. L. Rogers." This charge was not contained in the court's charge, except in the general application authorizing the jury if they believed that appellant sold the cotton belonging to Rogers and Tomson or either of them he should be acquitted. This charge should have been given with reference to the identity and ownership of the property. See Doss v. State, 28 Texas Crim. App. 506. There are quite a number of other cases, but we deem it unnecessary to cite or discuss them. One of the most serious questions in the case was whether this property was Rogers' or belonged to someone else. The State introduced the evidence given by appellant upon a former trial, that it belonged to Owens, and that Owens had obtained it as his wages for picking cotton. The evidence of Rogers is very uncertain and indefinite. He knew nothing of the bale of cotton as to its weight, marks, etc., except as given by the ginner's ticket. The ginner's books were not introduced or offered in evidence, and Rogers frankly stated that from the copy that he had made of the ginner's ticket, stating he had lost the ginner's ticket, and from circumstances he believed this to be his cotton. Another circumstance upon which he relied was his belief that his bale of cotton was marked with a black substance, and that it had been washed out and another brand put on it with a blue liquid. The testimony is fully as strong or stronger to the effect that the bale of cotton had not been washed, and there had been no substitution of a mark on it. This was from parties who made a close and critical examination of the bale of cotton. It is unnecessary to go into a detail of those matters. In this connection, while it did not get into the case, the defendant offered to prove that in an arbitration between Rogers and the purchaser of the bale of cotton, that the arbitrators gave it to the purchaser. This matter, however, was not permitted by the court to go to the jury, but it is recited in the bill of exceptions, and is simply mentioned in this connection. Why this charge was not given the court does not state in refusing to give it. If the bale of cotton did not belong to Rogers, the State had no case, and if the State could not identify the bale of cotton beyond a reasonable doubt, the jury ought to have been instructed to acquit. Doss v. State, supra.

Appellant requested special instructions on the subject of alibi.

The State put in his evidence to the effect that he was not present when the cotton was taken and had nothing to do with it, and that he was at another and different place and some distance away from where the cotton was taken. While usually it is said a judgment will not be reversed for failure to charge upon alibi, yet where it is one of the main defenses of the case and the evidence introduced supports it, and a special charge is asked, it ought to be given.

Again appellant asked the court to charge the jury that unless they believed the defendant was in some way connected with the original taking of the bale of cotton in controversy, they should acquit the defendant even though they might believe the cotton in controversy belonged to Rogers and was unlawfully taken by some other person, and even though they might believe defendant knew it was taken at the time he received it and hauled it to Memphis. This charge under the facts of this case ought certainly to have been given. The statute denouncing theft makes it necessary that the accused be connected with the original taking as principal. He must be the taker, and if he was not he could not be convicted, and if the State failed to prove it he could not be convicted, or if the jury had a reasonable doubt of that fact he should not be convicted. Again appellant asked the court to charge the jury that if they should believe the bale of cotton was stolen by Owens or some other person and was afterwards delivered to the defendant and he knew at the time of such delivery that the property had been stolen, they would acquit him. This is the same charge in another form. These charges were called for by the facts as introduced by the State. Another phase of the law called for by these facts that may be mentioned in case of another trial: The State having introduced the admissions or statements of the defendant that he had in his possession and sold for Owens the bale of cotton that was found at Memphis and claimed by Rogers, that it was incumbent on the State to show this testimony false, otherwise the jury would acquit. We suppose this testimony was introduced for the purpose of connecting appellant with the bale of cotton, trusting by other facts to prove the ownership in Rogers. In introducing this testimony, however, they put before the jury appellant's statements that he did not steal the cotton; that he got it from Owens, and had no connection with the theft and was not present when it was taken. The jury should have been instructed in this connection under the facts of this case that unless the State in some way disproved these matters appellant was entitled to a verdict of not guilty.

Appellant made application for a continuance for Allen Preston and Tom Wardlow by whom he expected to prove that Preston was acquainted with Henry Owens during the fall of 1909, and during November 1909 in Briscoe County, Texas, and that he was not with Henry Owens, and that Owens was inquiring for cotton to pick, and that he directed him to Tom Wardlow. By the witness Wardlow he expected to prove that he was acquainted with Henry Owens during

the fall of 1909, and during November, 1909, in Briscoe County. To defeat this continuance the district attorney admitted the truth of the foregoing evidence, whereupon the court overruled the application for a continuance, and subsequently during the trial the district attorney placed on the stand a witness by the name of Gray and proved by him that he lived in Quitaque community in Briscoe County near Tom Wardlow. The district attorney propounded to him the following question: ''State whether or not you knew any such person as Henry Owens in the fall of 1909?'' Various objections were urged to this, principally, the State having admitted the truth of the statement contained in the application for continuance, it was now estopped to disprove or attempt to disprove it. This was overruled and the witness testified that he knew of no such person. This testimony was inadmissible. The district attorney will not be permitted to admit the truth of the absent testimony in order to defeat the continuance and when it is defeated, during the trial he will not be permitted to controvert or contradict such admissions. Roberts v. State, decided by this court in January, this year; Van Meter v. People, 60 Ill. 168; Vinegar v. Com., 42 S. W. Rep. 351; White's Code of Crim. Proc., Sec. 639. This testimony became important as attacking defendant's evidence and theory that Owens was in that country and picked cotton in that country. The court should either have overruled the continuance, or should have compelled the district attorney to abide by his admission. Of course, the theory of the State was that Grey lived in the Quitaque community not far from Wardlow, and that because he did not know of such a man as Henry Owens he was, therefore, not in that community and did not pick cotton in that country and the admission of the district attorney that the evidence of the absent witness was not true.

Another bill of exceptions recites that while Rogers was testifying for the State as the alleged owner of the bale of cotton, and after he had stated that he had a bale of cotton at the Tomson gin on October 30th, which was numbered 134, the theory of the State being that the bale of cotton was taken by defendant about November 11, 1909, it being a material inquiry as to whether the prosecuting witness' bale of cotton No. 134 was in said gin in November, 1909, or whether or not it had been taken off by the witness Rogers to market previous to November, he having testified that he took six bales off in October, and that he knew nothing of which bales he took off except from tickets furnished him by the ginner, and that he had no independent recollection aside from these tickets of the number of the bale, nor had he seen it weighed at the gin or at the market, and did not know its weight save by what had been told him; whereupon he was asked whether or not this bale of cotton No. 134 was among the six which he carried to market in October, to which he answered that according to the market weight and the gin weight, it was not. Appellant immediately moved the court to exclude this testimony and strike it

from being considered by the jury because it was not the best evidence, and witness was testifying as to his information and conclusion and was hearsay evidence. *The motion was overruled and the testimony went before the jury.* The judge signs this bill with this statement: "The witness had already stated that he got the data for the memorandum from the gin tickets, which were shown to be lost." This answer was inadmissible. It was purely hearsay and based upon a memorandum furnished him by a third person or other parties and was upon one of the most vital issues in the case. It will be seen from this bill that Rogers testifies that he had the ginner's tickets with some weights, etc., which he had lost; he then made a memorandum of what these lost tickets contained. The tickets themselves would not be the best evidence, even if he had had the originals. The books of the ginner, if they were going to try to identify the bales of cotton by weights and things of that sort, would have been the best evidence, if the books had been shown to be properly kept. See Howard v. State, 35 Texas Crim. Rep., 136; Wade v. State, 37 Texas Crim. Rep., 401.

Another bill recites that Rogers testified that on October 30, 1909, he had four bales of cotton in Tomson's gin-yard, and among them one was numbered 134, which weighed 535 pounds, gin weight, and that this bale was ginned tenth month, ninth day, 1909, after which, upon cross-examination, the defendant's counsel propounded to him the following interrogatories, to which the following answers were made: "Q. Do you remember the weight independently of any memorandum you have there,—could you have thrown that away and testified? A. My memory is not good, and I do not base anything on my memory except what I set down. Q. Then you are testifying from that paper? A. That is all I have to go by; the tickets that the ginner gave me. Q. Do you remember when that bale of cotton was ginned,— what day it was ginned? A. What day it was ginned. Q. Yes, sir. A. Well, I tell you I could go by the tickets and that is all I have. Q. Is that memorandum you have been testifying from made from the tickets? A. Yes, sir, it was. Q. Can you now remember what the numbers of the bales were; could you remember the numbers? A. I can only from the tickets. Q. Only from the tickets? A. Yes, sir. Q. That is the gin tickets? A. Yes, sir. Q. Now, on October 30th you had four bales there at the gin, which four was that? A. I couldn't tell without the list. Q. All of this list has been made up since this offense is supposed to have been committed; you have looked all this up since you had this defendant arrested, haven't you? A. Yes, sir. Q. Of your own independent knowledge you don't know anything about it do you? A. Unless from the way I got that. Q. I don't care the way you got it; I asked you if you knew, independently of these tickets you don't know anything about it? A. I do not, only from the tickets; that is all." The defendant then moved the court to exclude and withdraw all the testimony with reference to the tickets, weights, numbers and bales of cotton, and number of bales of cotton for the

reason that the same was hearsay acts and declarations, coming from the memorandum made from other parties and not shown to be correct, and all of which were made in the absence of defendant, which objections and motions the court then and there overruled, the record of this case showing that the Rogers bale of cotton was missed about the 11th day of November, 1909, from Tomson gin yard; that a bale was subsequently found in the town of Memphis which weighed within four pounds of the Rogers bale, and which was branded 171 T, which is the bale supposed to have been sold by defendant and taken by him from the Tomson gin-yard, to which action and ruling of the court and refusing to strike out the testimony defendant excepted, etc. The judge signs this bill with the following statement: ''This witness was testifying from a list he said he had made from the gin tickets furnished him by the ginner, when he had his cotton ginned, and proof was made by the district attorney, who last had these tickets, that same were lost. With this explanation this bill is approved.'' This bill is to be disposed of as was the previous one. This testimony ought not to have gone to the jury in this condition. This was hearsay in a rather remote degree, acts between third parties, without proof of the fact that the original gin tickets were correct, or showed a correct transcript from the ginner's books. This is hearsay in rather a remote degree of relationship to the real facts. There are several of these bills in the same condition bearing on the same question and presenting the matter in different ways, and reserved to testimony developed by the State along these lines. It is unnecessary to go farther into those matters. What we have said in reference to the two bills discussed ought to be sufficient to indicate the condition of the other bills of exception.

A bill of exceptions was reserved in reference to the introduction of the check for $73.60, which appellant gave Owens for the money realized from the sale of the bale of cotton. One of the bills recites that the check for $73.60, reported to have been drawn by defendant, which had been introduced by him at a former trial of the case in evidence, was on the trial of this case introduced by the State, the theory of the State being that this check which the defendant testified on a former trial he had given for the bale of cotton in controversy, and for the theft of which he was upon trial, was a bogus check and had been changed or altered from a $25 check given to one A. L. McCann to a $73.60 check given to Henry Owens, and it was then and there a material inquiry and a contested issue as to whether or not such check had been so altered. In this connection the State introduced Lowe, who was shown said check, and he was asked the following questions regarding it: ''Q. I will ask you, Mr. Lowe, to examine that check there and see if you find anything has been erased, or what you find on there?'' The defendant then and there objected because the check itself was the best evidence of its condition, because it was taking away from the jury the very question that they would have to

pass on, because it was not a question that called for any expert testimony, and because it was purely an opinion and conclusion of the witness, which objections were overruled, and Lowe testified as follows: "It seems to show evidence of erasures made on the check; it seems there had been an erasure made on the check; one is that the check shows double naught over 100. You can see that with your naked eye. It shows a double naught and 100 over it; it seems that there might have been erasures where the endorsement is. It appears to have been rubbed, my opinion is before the endorsement was put on it." This is signed by the judge without qualification.

Several authorities are cited by appellant in support of this proposition: Tyler v. State, 11 Texas Crim. App., 388; Knoll v. State, 55 Wis. 249, 42 Am. Rep., 704; Commonwealth v. Webster, 52 Am. Dec., 711. It is shown by another bill that while the witness Lowe was on the stand testifying for the State, he was shown a memorandum in writing, which he identified as a letter of advice from the First National Bank of Fort Worth which the First National Bank of Silverton had received on November 23, 1909, and after such identification the State offered the letter of advice in evidence for the purpose of showing that a certain check for $73.60, which had been introduced by the State as the check defendant testified he gave for the bale of cotton in controversy, and which showed upon its face to have been cashed by the First National Bank of Silverton on November 23, 1909, and also to have borne the stamp of the First National Bank of Fort Worth, and forwarded by the First National Bank of Fort Worth to the First National Bank of Silverton for collection, to which letter of advice the defendant objected to its admission in evidence, because it was not sworn to, and was hearsay as to this defendant, which objections were by the court overruled, and the letter of advice with all of its contents, etc., was introduced. Among other things on the letter, after setting out the items in the letter of advice, we find this: "We enclose for collection and credit items as listed. Deliver papers only upon payment of draft $15.00 and under no protest. Yours truly, T. W. Slack, Cashier. Items marked X no protest. M. B. Loyd, Pres., R. D. Gage, V-Pres., W. E. Connell, V-Pres., T. W. Slack, Cashier, H. I. Gahangan, Asst. Cash., The First National Bank, Fort Worth, Texas." This was a matter occurring between third parties on what was thought to be a vital issue in the case, purely hearsay as to defendant, and not in any way binding upon him, and not proved to have been written by the parties. In fact, it was a matter occurring between third parties and not connected up so as to show it was evidence against this defendant; he had nothing to do with it; it was a matter occurring between the other parties.

Another bill in this same connection shows that while the witness Lowe was testifying he stated that he was working for the First National Bank of Silverton during November, 1909, and that Mr. Turner Stephenson was doing the book work for said bank, and that

from his own knowledge and personal recollection he did not know whether a check for $73.60 of the defendant J. A. Davis was cashed in November, 1909, or not, and that he was testifying solely from the books, and that his testimony was based upon memorandum taken from the books and the letter written to them by the First National Bank of Fort Worth, and he was asked whether or not the instrument of writing held in his hand was the letter of advice from the First National Bank of Fort Worth, received by the First National Bank of Silverton on the 23rd day of November, 1909, and whether or not same contained any check of defendant. Appellant objected because the letter of advice from the First National Bank of Fort Worth was hearsay, was unsworn and was secondary evidence. This was over-ruled and the witness answered to the foregoing, that there was a check of the defendant for $25.00 received from the First National Bank of Fort Worth on that date, and read as follows, after setting out several items: "We enclose for collection and credit items as listed. Deliver papers only upon payment of draft, $15.00, and under no protest. Yours truly, T. W. Slack, Cashier." These matters are all in the same class, and as presented we are of opinion they should not have gone to the jury.

There are other questions arising in the case, but what has been said sufficiently disposes of those not discussed. The court will understand the view as taken of the case in this opinion.

For the errors discussed the judgment is reversed and the cause is remanded.

*Reversed and remanded.*