Oscar TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 42194.

Court of Criminal Appeals of Texas.

Nov. 26, 1969.

Rehearing Denied March 4, 1970.

Joel W. Westbrook and Charles E. Wallace, Waco (court appointed counsel), for appellant.

Martin D. Eichelberger, Dist. Atty., Waco, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is murder; the punishment, death.

Two men were killed and two injured by appellant by the use of a pistol during the course of a filling station robbery.

Appellant's 1st, 9th, and 29th grounds of error relate to the jury selection which he contends was effectuated in violation of the rule of Witherspoon v. State of Illinois et al., 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776.

■ In his brief appellant points to *ten veniremen.* At the hearing on the motion for new trial affidavits of six of the ten were presented to the trial court which show that each of the six were thoroughly qualified for excuse under the Witherspoon rule. These affidavits were admissible for consideration by the Court at the hearing on the motion for new trial under the terms of Article 40.06, Vernon's Ann.C.C.P. We shall discuss the examination of the remaining four from the original *voir dire.*

Venireman Watkins stated, unequivocally, "I just don't believe in putting anybody to death."

Venireman Jackson said, "I don't believe in the death penalty." We quote further from his examination as follows:

"Q. Mr. Jackson, if selected as a juror in the case, could you * * * in a case, could you, after hearing the facts, and if the facts were of a rather extreme nature. For example, a man put a bomb on an airplane where his mother was on board to blow it up, and he gets the Insurance, and the evidence shows that he is not insane, could you sit as a member of the jury in a case like that and vote for the death penalty?

"A. I don't believe in the death penalty.

"Q. You have conscientious scruples against it?

"A. Yes, sir.

"COURT: I sustain the challenge; Mr. Jackson you are excused."

Venireman Johnson answered as follows:

"A. Well, no, I'll just put it like this. I don't believe in capital punishment and I just couldn't go along with it under no circumstances."

■ Venireman Bradford is the most doubtful one and yet his statement that he could not, if elected foreman, sign a verdict of death in any case removes him from the scope of the Witherspoon rule. This statement would, we believe, disqualify him under the Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433, which opinion explains further the holding of the Court in Witherspoon.

The second ground of error is that the State systematically excluded black veniremen from service as jurors in his case. At the hearing on motion for a new trial, the State exercised only peremptory challenges and was not required to give his reasons for using them, Ross v. State, 157 Tex. Cr.R. 371, 246 S.W.2d 884. However, out of an abundance of caution, the prosecutor was called as a witness and gave his reasons for having challenged each of the veniremen about which he was questioned. He stated that he struck venireman Eddie Henderson, a "colored man," because the police records showed that he had been investigated for burglary. He stated that he struck venireman Hardeman, a "colored" school teacher, because "he was very evasive on whether or not he could ever give the death penalty and made other statements about minority races and court appointed attorneys." He further stated that he struck "colored" venireman Willie Hobbs, because of a complaint made by Hobbs to the District Attorney's Office about having been stopped by the Highway Patrol when others were driving as fast as he was.

■ His further testimony is clear that there was no systematic exclusion of black persons from the jury. In Johnson v. State, Tex.Cr.App., 411 S.W.2d 363, we recently discussed the propriety of the State's challenging black members of the panel.

■ Appellant's third ground of error, if we properly understand it, is that since the indictment was returned prior to August 28, 1967 (the day the change in Article 37.07, V.A.C.C.P., became effective) and he was not tried until after such date that the jury was not authorized to set his punishment at death. Appellant's case was first set for trial on October 23, 1967, and we find no merit in such contention.

■ His 4th, 5th, and 6th grounds of error are that he was not permitted to prove the results of a Belden poll which he says would show that more than half of the people interviewed did not favor the death penalty as punishment for crime. His reliance upon Witherspoon v. Illinois, supra, is misplaced. He cites no case which has recognized such a poll as valid evidence and we know of none. We further conclude that the Court did not err in limiting the cross examination as to the mental processes the veniremen would employ if selected to serve on the jury. Barry v. State, 165 Tex.Cr.R. 204, 305 S.W.2d 580.

■ Appellant's 7th ground of error concerns the line-up identification. We quote from the trial court's findings:

On the 18th day of January, A.D. 1968, during the trial of the above styled and numbered cause, the defendant, his attorneys, and the State's attorneys, all being present in person in open Court, the State, separately, offered into evidence the in-court identification of the defendant, Oscar Turner, by the witnesses Harry Volcik and Patrick Wolf; and, at each offer, the defendant objected to said evidence and requested, and was granted, a hearing outside the presence and hearing of the jury to develop evidence in support of its objection and motions to suppress said evidence on the ground that said in-court identifications were the result of illegal line-up identifications by the defendant by said witnesses, and that said in-court identifications were in violation of various state and federal constitutional rights of the defendant. After the conclusion of each of said hearings, the Court admitted into evidence the in-court identification of the defendant by said witnesses as a matter of law, and further, as trier of the facts relating to the issue of their admissibility, the Court found from the evidence by clear and convincing proof and beyond any reasonable doubt that said in-court identifications were of source and origin independent of the line-up identification.

The Court therefore finds and concludes from the above facts, and all the evidence admitted on the questions, and

the demeanor of the witnesses, that the in-court identifications of the defendant by the witnesses Harry Volcik and Patrick Wolf are completely independent of any viewing of pictures of the defendant by said witnesses before the trial, and are completely independent of viewing and identifying said defendant in said line-up, and are completely independent of a combination of viewing said pictures and said line-up identification; and that said in-court identifications are based solely upon the observance by said witnesses of said defendant on June 8, 1967; that the viewing of said pictures and said line-up identification does not in any fashion affect the right of the defendant to a meaningful cross-examination of the witnesses Harry Volcik and Patrick Wolf, nor deny said defendant effective assistance of counsel at the trial itself; and that said in-court identifications of said defendant by said witnesses were not obtained by, and did not result from, any denial of due process in violation of the defendant's legal rights.

This seems to be in accordance with United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149. See also Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, an opinion by the then Judge Burger, and Giddings v. State, Tex.Cr.App., 438 S.W.2d 805. Our examination of the record of the pretrial hearing clearly supports the trial court's findings.

■ The ground of error numbered 8 relates the State's challenge of venirewoman Henderson who stated that she would infer guilt if the appellant did not testify. Clearly her answer would disqualify her under Article 38.08, V.A.C.C.P., and she was disqualified.

■ His 10th and 12th grounds relate to the State's challenge to veniremen Garrett and Harris. They both stated that they had formed an opinion that appellant was guilty. Article 35.16(a), Sec. 9, V.A.C.C.P., provides that either party may challenge a venireman who expresses such an opinion.

■ The appellant's 11th, 13th, and 59th grounds relate to the granting of the State's challenge to venireman Henry and overruling appellant's challenge to veniremen Lacy and Bridges. Each stated that they could not agree to a verdict assessing the punishment at as low as two years in which the State had proven that the murder was committed with malice. His argument that this was a challenge that could be made only by the appellant relates then only to Henry and Bridges. While it may be that Henry and Bridges had a bias against the murder statute (Article 1257, Vernon's Ann. P.C.) so as to disqualify them under Article 35.16(b) (3), V.A.C.C.P., we need not pass upon such question because appellant did not exhaust his peremptory challenges and no objectionable juror was forced upon him, Pittman v. State, Tex.Cr.App., 434 S.W.2d 352.

■ Appellant's 14th and 15th grounds of error relate to the insufficiency of the evidence and the failure of the court to charge on the law of circumstantial evidence. We have pointed out the two wounded witnesses positively identified appellant as the person who robbed the filling station using a pistol to effect his purpose. Though they did not see him shoot the Kaskas, he was the only person armed at the scene, and the spent shells found at such place were shown to have been fired from the pistol found in appellant's possession at the time of his arrest. This Court has consistently held that where the facts are in such close juxtaposition to each other that a charge on circumstantial evidence need not be given, De La O v. State, Tex.Cr.App., 373 S.W.2d 501.

■ The 16th ground of error contends that there is a fatal variance between the indictment and the proof in that the proof shows that the Kaskas were killed by more than one bullet while the indictment would imply that only one bullet killed both of them. So, we stated in the beginning one fusillade of bullets from the same weapon fired by appellant, one right after the

other, caused the death of both Kaskas. We find no merit in this contention: see Spannell v. State, 83 Tex.Cr.R. 418, 203 S.W. 357, 2 A.L.R. 593.

Appellant's next most strenuously urged ground of error grows out of the Court's charge, and these are raised by his grounds of error in numbers 17, 18, 19, 20, 21, and 22. The indictment charged that appellant killed both Anton and David Kaska. In his charge to the jury the Court, over appellant's objection, charged the jury that they might find appellant guilty if they found that he killed Anton Kaskas *or* David Kaska.

The most difficult case to distinguish or overrule is the last paragraph of this Court's opinion in Pate v. State, 91 Tex.Cr. R. 471, 239 S.W. 967. It must be acknowledged that such paragraph was not determinative of that appeal and, therefore, must be considered as *dicta*. Insofar as the statement of law contained in such paragraph is contrary to the results we reach in this case it is overruled.

The same is true as to the *dicta* contained in Barton v. State, 88 Tex.Cr.R. 368, 227 S.W. 317, 13 A.L.R. 147. Brown v. State, 102 Tex.Cr.R. 54, 276 S.W. 908, dealt with the sufficiency of the evidence and is not controlling here.

While it is true that Layman v. State, 126 Tex.Cr.R. 533, 73 S.W.2d 97, the last expression of this Court on the question presented, holds this procedure outlined above to be erroneous; it further holds it to be a harmless error. If the Court in Layman had not considered it so they would not have written beyond the point where they noted that no objection had been interposed.

█ The majority of this Court as presently constituted, fully agree with the holding in Layman that this procedure is erroneous but does not constitute reversible error. This conclusion is bottomed upon the conviction that appellant could not conceivably be injured by this manner of submission. The evidence is clear that both parties named in the indictment were shot by this appellant in one fusillade from one weapon. The charge was murder, and when the jury found that he killed one of the parties named, the State had made its case. The punishment would not have been enhanced had the jury found that appellant killed both injured parties named in the indictment.

We fully agree with Judge Henderson's opinion in Scott v. State, 46 Tex.Cr.R. 305, 81 S.W. 950,[1] wherein he quotes from Bishop, Cr.Pro. vol. 2, 60; Id. vol. 1, 437, as follows:

"In reason, an assault on A. and B. is an assault both on A. and likewise on B.; and, when it is proved as to one, a complete offense appears equally in the evidence and in the allegation."

This type of case is readily distinguishable from theft and other cases because here the offense is complete when one of the two alleged assaulted parties dies at the hands of this assailant, whereas, in other cases a jury's finding may determine whether the case be a felony or a misdemeanor or a number of other factors which determine the nature of the offense or the jurisdiction of the court.

█ It has long been the rule in this State that by the terms of Article 1408, V.A.P.C., (robbery) the words "any property" require only that the state prove that the accused took "any property" and that which is alleged in the indictment need not be proven in its entirety, 5 Branch 2d 23, Sec. 2589. It therefore follows that proof of the killing of "any person" denounced in Article 1256, V.A.P.C., is sufficient to support a conviction for murder.

█ It is far too academic for this Court to accept under the facts before us that, as appellant contends, some of the

1. The citator reflects that Scott has not been overruled.

jurors may have found that appellant killed David Kaska while others might have believed that he killed Anton Kaska. The shots were fired in a one, two, three fashion and if the jury believed that appellant killed one, then they necessarily believed that he killed the other.

 Appellant's ground of error number 23 relates to the action of the Court in refusing to change the venue. Appellant called four witnesses who testified that it was their opinion that appellant could not receive a fair trial in McLennan County. He further offered clippings from the local press giving an account of the robbery. The State offered fifteen residents of the community who stated that in their opinion appellant might receive a fair trial in said county. The Court did not err in overruling the motion for change of venue when originally made.

During their examination of the *venire*, appellant's excellent court appointed attorneys made no serious effort to develop the facts as to the publicity and its effect on the prospective jurors. He satisfied himself by merely asking if they had seen any of the news articles or seen a television report of the robbery.

Three of the jurors could not remember ever having read anything about the robbery. One read only the headlines; the remaining eight remembered reading something about it in the paper or hearing a report on television, but each was implicit in their statements that they formed no opinion as to the appellant's guilt therefrom. The examination was conducted with extreme care as we had occasion to commend in Enriquez v. State, Tex.Cr.App., 429 S.W. 2d 141. This is a far cry from Williams v. State, 162 Tex.Cr.R. 202, 283 S.W.2d 239, relied upon by appellant. In that case five members of the panel had learned from reading the newspaper about eight sets of facts which were not admissible at Williams' trial. No such facts are before us here and we find no error in the Court's failing to change venue. The Court did

not err in overruling the motion for change of venue made at the conclusion of the selection of the jury.

The 24th through 28th grounds of error relate to the failure of the Court to sustain his many challenges to venireman Barrett.

Quintana v. State, Tex.Cr.App., 441 S.W. 2d 191, and the cases there cited dispose of these contentions.

 His 30th and 31st grounds relate to proof that appellant was carried by the Deputy Sheriff to Scott and White Hospital. Clearly such proof was relevant to the issue of insanity which was raised. The objection that the same was immaterial is not considered as ground of error unless there is a possibility of harm to the accused.

 Appellant's 32nd, 33rd, and 34th grounds of error relate to the introduction of evidence as to the results of the pretrial, sanity hearing. We had occasion recently to hold that such evidence is admissible, in Wilkinson v. State, Tex.Cr.App., 423 S.W. 2d 311. Appellant cites no authority to the contrary.

 The 35th and 36th grounds of error relate to the Court's charge in which he instructed the jury that "every person charged with crime is presumed to possess sufficient mental capacity to advise and assist his counsel in preparing and presenting a rational defense of the offense of which he is charged," and improperly shifted the burden of proof on the question of insanity. Recently in Fuller v. State, Tex.Cr.App., 423 S.W.2d 924, we said:

Every person is presumed to be sane (in absence of an unvacated judgment of insanity) and to have sufficient judgment and reason to be responsible for his acts until the contrary is established. It is by reason of this presumption that the law casts upon one relying on insanity as a defense to a crime the burden of establishing by a preponderance of the evidence that his intellect was so disordered that he did not know the nature and quality of the act he was doing, or

if he did know that he was unable to distinguish between the right and wrong as to the particular act charged.

See also the opinion by the then Circuit Judge Burger in Keys v. U. S., 120 U.S. App.D.C. 343, 346 F.2d 824.

■ The ground numbered 37 relates to Dr. Moore's testifying from the hospital records which appellant had already introduced into evidence. We find no merit in such ground.

■ His grounds of error 38, 39, 40, 41 and 42 relate to the photographs taken at the scene of the shooting. We have examined them with care and fail to find them inflammatory and hold that they were properly admissible.

■ The 43rd and 55th grounds relate to the testimony of Dr. Wittstruck concerning the autopsy performed on the two deceased. This Court has held that the State may not be limited in its proof by an offer to stipulate, Rodriguez v. State, Tex.Cr.App., 373 S.W.2d 258. They were entitled in a murder case to show the course of the bullet. Whaley v. State, Tex.Cr. App., 367 S.W.2d 703, relied upon by the appellant can have no application to Dr. Wittstruck's medical testimony.

■ Appellant's 44th ground of error is that at the time the Court heard argument on a motion for instructed verdict the appellant was not present. The State answers by stating, and the record supports them, that as soon as the Court realized that appellant was not present he brought the proceeding to a halt and had appellant brought into the courtroom and reheard the argument in appellant's presence. Thus, no error is presented, Cason v. State, 52 Tex.Cr.R. 220, 106 S.W. 337.

His 45th and 46th grounds of error are that the court failed to quash the indictment and failed to grant his motion in arrest of judgment because the indictment was duplicitous. This contention has been fully met in our earlier discussion of his grounds of error 17 through 21.

■ We overrule his 47th ground of error in which he stated that the verdict is contrary to the law and the evidence.

■ The 48th ground of error relates to the questioning of one Marvin Wilson, appellant's witness, at the hearing on punishment where Wilson was asked if he knew about the appellant's prior misdemeanor conviction for the offense of impersonating an officer, Article 429, V.A. P.C., which did not involve moral turpitude. The term, prior criminal record, has been defined by the 1967 amendment of Article 37.07, V.A.C.C.P., so as to include misdemeanors where the conviction was in a Court of Record.

■ His 49th ground of error relates to the testimony of one Rolston who stated that shortly after the killings, and as appellant was fleeing the scene, appellant exhibited to him a credit card bearing a name other than his own. We have concluded that such evidence was admissible under the holding of this Court in Churchill v. State, 167 Tex.Cr.R. 26, 317 S.W.2d 541, which discusses the "general doctrine which permits a full showing as to flight."[2]

■ His 59th and 60th grounds of error relate to the failure of the Court to instruct the jury that the object of punishment is to suppress crime and reform the offender. In Crain v. State, Tex.Cr.App., 394 S.W.2d 165, this Court held that such a charge as requested would be a comment on the weight of the evidence and the failure to grant did not constitute reversible error.

■ Grounds 51, 52, and 53 relate to the action of the Court in sustaining the State's objection to certain argument by defense counsel in which they sought to read to the jury a portion of a resolution adopted by the Baptist General Assembly,

---

2. See also Ellisor v. State, 162 Tex.Cr.R. 117, 282 S.W.2d 393.

and other resolutions by other religious groups and as to what Jesus would have said to the jury about their verdict.

Since none of the matters set out above were in evidence, the Court was clearly right in limiting the counsel's argument to the evidence adduced.

■ The 54th ground asserts jury misconduct growing out of a discussion of the parole law. We have examined the testimony of the ten jurors who were examined at the hearing on the motion for new trial and find only one who could remember a discussion of parole. His testimony fits with the category of cases cited in the opinion of this Court in De La Rosa v. State, 167 Tex.Cr.R. 28, 317 S.W.2d 544, 546, and does not constitute jury misconduct.

Ground number 56 which relates to the Court's refusal to instruct the jury to return a verdict of not guilty is overruled.

■ The 57th ground relates to Deputy Stovall's testimony as to his opinion that a bullet had penetrated the Kaskas' automobile. Any police officer with experience comparable to that of Stovall would be qualified to give such an opinion.

■ The ground of error numbered 58 is that the verdict did not find him guilty. We quote from the verdict as follows:

"We, the jury, having found the defendant Oscar Turner, guilty of the offense of murder with malice aforethought, assess his punishment therefore as death.

(s) Donald M. Headen
Foreman."

Finding no reversible error, the judgment is affirmed.

DOUGLAS, J., not participating.

WOODLEY, Presiding Judge (concurring).

I do not agree that the murder of Anton Kaska and the murder of David Kaska were in law one and the same transaction, act or offense. See Good v. State, 98 Tex.Cr.R. 556, 267 S.W. 505; Augustine v. State, 41 Tex.Cr.R. 59, 52 S.W. 77; Berwick v. State, 120 Tex.Cr.R. 322, 47 S.W.2d 322; Alsup v. State, 120 Tex.Cr.R. 310, 49 S.W.2d 749; Cook v. State, 43 Tex. Cr.R. 182, 63 S.W. 872, and Ashton v. State, 31 Tex.Cr.R. 482, 21 S.W. 48.

The trial court did not err in failing to quash the indictment. See 1 Branch's Ann. P.C.2d 502, Sec. 526, and cases cited.

The view of the writer is that, when it became known to the trial court that both of the Kaskas were not killed by a single act, it would have been proper to require the state to elect which of the two murders would be relied on, and under the evidence to submit to the jury the case of murder with malice for the killing of Anton or the killing of David Kaska depending upon the election made.

The killings were committed during the course of an armed robbery. Both of the Kaskas were innocent bystanders, as were victims of intervening shots whose wounds did not prove to be fatal.

Appellant's sole defense was insanity.

There is no reasonable basis for assuming that the jury would have rendered a different verdict whether the court submitted the case (1) for murder of Anton Kaska or (2) the murder of David Kaska, or (3) for the murder of Anton and David Kaska, or (4) for the murder of Anton or David Kaska.

The writer is aware of no authority for a final conviction for two murders committed by separate acts charged in the same indictment. However, it would appear that, if supported by the evidence, such a verdict may be applied to either murder.

In view of the fact that the evidence sustains the conviction and the extreme penal-

ty, and no further prosecution may be had for the murder of the other, it is immaterial whether the jury's verdict be applied to the killing of David or to the killing of Anton Kaska.

The state acquired no benefit by alleging the murder of both Anton and David Kaska in the same indictment. All of the evidence that was offered by the state at the trial would have been admissible had the indictment alleged the murder of one of them.

On the other hand, the conviction of appellant for the murder of one of the Kaskas would not have precluded his conviction at a subsequent trial for the murder of the other Kaska, but for the fact that both murders had been charged in the same indictment.

The state was thus deprived of a second opportunity to seek the death penalty, had the first failed, or to obtain cumulated punishment if both failed, by reason of the fact that both murders were charged in the same indictment.

The errors were in the court's charge. The statutes which require the court to deliver a written charge to the jury setting forth the law applicable to the case and the rules relating to such charge are set out in Arts. 36.14, 36.15, 36.16, 36.17 and 36.18 V.A.C.C.P.

Art. 36.19 V.A.C.C.P. specifically provides that whenever it appears by the record in any criminal action on appeal that *any* requirement of said articles has been *disregarded*, the judgment *shall not* be reversed *unless* the error appearing from the record was calculated to injure the rights of defendant, *or unless* it appears from the record that the defendant has not had a fair and impartial trial.

I concur in the conclusion that the errors in the court's charge were not calculated to injure the rights of appellant and that it does not appear from the record that appellant has not had a fair and impartial trial.

BELCHER, Judge (concurring).

It is undisputed that the appellant was the only person at the scene of the killings who exhibited a pistol, he is the only person who shot the pistol, he is the man who put two bullets in the body of David Kaska and one in the body of Anton Kaska, and that these three bullets fired from the same pistol by the appellant caused the death of David and Anton Kaska. The name of the appellant and the names of the deceased, David Kaska and Anton Kaska, are the only names in the indictment and in the court's charge. The fact that the verdict finds the appellant guilty of the offense of murder, but does not specify that the appellant killed David or Anton Kaska under the undisputed evidence that he killed both David and Anton should not warrant a reversal. The Legislature in its wisdom provided for situations like the one here presented when it enacted the Texas Code of Criminal Procedure:

"TRIAL AND ITS INCIDENTS

Chapter Thirty-Six

THE TRIAL BEFORE THE JURY

"Art. 36.19 Review of charge on appeal

"Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, *the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial.*" (Emphasis added)

The record fails to reveal anything that was reasonably calculated to injure the rights of the appellant and show that he has not had a fair and impartial trial.

I respectfully concur.

ONION, Judge (dissenting).

The record reflects that while appellant and his companion, Willis Scott, were in the process of an armed robbery of Pat Wolf and Harry Volcik, attendants at the Wolf Service Station in West, Texas, on June 8, 1967, Anton and David Kaska, father and son, drove into said station. The appellant told the attendants to see what they wanted and to "Play it cool."

Wolf testified that Anton Kaska requested that the battery water of his car be checked and that he (Wolf) raised the hood of the car while Volcik went for the battery water; that the hood of the car blocked his view of the appellant; that Anton Kaska got out of the car and came to the front of the car, leaving David Kaska seated in the passenger side of the front seat or the right side of the car; that Volcik had returned with the battery water when the right front window of the car seemed to explode; that then Anton Kaska fell; that the appellant came around to the front of the car and shot him (Wolf); that he then heard Willis Scott shout "You got one running"; that he got up and fled to the rear of the station through some woods while he heard shooting and screaming; that he stopped a motorist; that the police were called; that he returned to the station and was taken to the hospital.

Volcik corroborated Wolf's testimony and further related that when Wolf was shot he fled but was himself shot and fell; that appellant walked up and while standing over him shot him again; that he then observed the appellant go to the Kaska car

and lean inside the car on the passenger side and that a hand that he (Volcik) had observed being held up by a person in the car (later shown to be 19 year old David Kaska) just fell or dropped; that he did not hear any shots fired, even the ones that struck him.

Two bullets were found in the body of David Kaska and one in the body of Anton Kaska.

In my opinion the appellant's grounds of error dealing with the allegations of the indictment, the court's charge and the verdict raise serious questions.

Omitting the formal parts, the *one count* indictment alleged that "Oscar Turner did voluntarily and with malice aforethought kill Anton Leo Kaska, Jr. *and* David Edward Kaska by shooting *them* with a pistol." (emphasis supplied)

At the conclusion of the guilt stage of the bifurcated trial the court charged the jury, over appellant's timely presented written objection, as follows:

"Now, therefore, if you find and believe from the evidence beyond a reasonable doubt that on or about the 8th day of June, A.D., 1967, in McLennan County, Texas, the defendant, Oscar Turner, did voluntarily and with malice aforethought kill Anton Leo Kaska, Jr. *or* David Edward Kaska by then and there shooting them with a pistol, then you shall find the defendant guilty of murder with malice aforethought, as alleged in the indictment, and so state in your verdict." (emphasis supplied)

Evidently believing that the issue of murder without malice was raised by the evidence, the court submitted such issue in the same manner as the issue of murder with malice.

The verdict returned at the guilt stage of the proceedings reads:

"We, the jury, find the defendant, Oscar Turner, guilty of the offense of murder with malice aforethought.

Donald M. Headen
Foreman." [1]

The State's brief contends that "[t]he State's position *from the beginning of this case* has been that Anton and David Kaska were killed in the course of one transaction, one act by the appellant, provoked by one intent of the appellant." (emphasis supplied) It thus appears to be the State's contention that the indictment manifests the intention upon the part of the pleader to charge a single assault upon both Kaskas jointly or a homicide of two persons by the same act or violation.

The court, despite appellant's timely objection and the State's position, charged the jurors that they might convict the appellant if they found beyond a reasonable doubt that he had with malice aforethought killed Anton or David Kaska. The court refused to charge that the jury was to acquit unless it found that the appellant had killed both Anton and David Kaska. In other words, the court submitted the case to the jury disjunctively despite the conjunctive pleadings. No Texas homicide case involving a disjunctive charge has been cited and I have found none.

To support the type of submission utilized the State cites the 1904 case of Scott v. State, 46 Tex.Cr.R. 305, 81 S.W. 950, an assault with intent to murder prosecution where the indictment charged the assault was committed in and upon Isom Chandler and in and upon John Chandler. There the court's instruction to the jury that if they believed Scott fired the first shot at either John Chandler or Isom Chandler, or at both, to convict him, was upheld. The

Scott charge, of course, is not exactly like that in the case at bar.

Without reference to Scott, this Court in Barton v. State, 88 Tex.Cr.R. 368, 227 S.W. 317, 13 A.L.R. 147, held that under a count charging an assault to rob two persons jointly, the defendant could not be convicted if the assualt was made on only one of such persons. Cf. Davis v. State, 68 Tex.Cr.R. 400, 152 S.W. 1094; Price v. State, 38 Tex.Cr.R. 300, 202 S.W. 948. In view of special charges given, the court refused to reverse on this ground. The reversal in Barton was on other grounds.

Pate v. State, 91 Tex.Cr.R. 471, 239 S.W. 967, a robbery case, noted among other errors, the error of the court in charging disjunctively. There the Court said:

"Nor is the court's charge in paragraph 4, wherein the jury are told that, if they believe appellant, Rogers, and Dollar made an assault upon Cozine and Hampton, or either of them, and by violence to Cozine and Hampton, or either of them, and by putting Cozine and Hampton, or either of them, in fear of life and bodily injury, etc., in accordance with the authorities. It would seem clear that the indictment charges an assault upon both Cozine and Hampton, and the use of violence toward both of said parties, and thus charges a joint assault, and that in such case the court could not instruct the jury to find appellant guilty, if an assault was committed upon either of them, or violence used toward either of them. Barton v. State, 88 Tex.Cr.R. [368] 370, 227 S.W. 317, 13 A.L.R. 147; Neely v. State, 32 Tex.Cr.R. [370] 372, 23 S.W. 798; Woods v. State, 26 Tex. App. [490,] 508, 10 S.W. 108; Henley v. State, 61 Tex.Cr.R. 428, 135 S.W. 133; Davis v. State, 68 Tex.Cr.R. 400, 152 S.W. [1094] 1095."

Brown v. State, 102 Tex.Cr.R. 54, 276 S.W. 908, a liquor law violation conviction,

---

1. The verdict rendered at the conclusion of the hearing on punishment reads:
 "We, the jury, having found the defendant, Oscar Turner, guilty of the offense of murder with malice aforethought, assess his punishment therefor at death."

was reversed for the failure of the proof to support the averment in the indictment of a joint sale to three named purchasers, and the refusal of the trial judge upon request to charge that an acquittal must result if the sale was made by Brown to less than all of the parties named as purchasers. In the concurring and dissenting opinions the question before us now was thoroughly discussed.

Concurring, Presiding Judge Morrow, after quoting from Barton and Pate, wrote:

"In practice, there need be no variance by reason of the name of the purchaser, the owner, or the injured party. If there is uncertainty in the advance knowledge of the pleader touching the direction that the evidence will take upon the trial, as to whether the assault was committed upon one or more than one, or as to whether the owner was joint or several, or the purchaser was one or more, the law permits that the indictment be drawn in separate counts and the state thereby be protected against any injury. To secure the state in its rights, it is not necessary that the law touching the certainty of indictments and the agreement of proof in the averment be abandoned or abrogated to meet the particular case. It is required only that the pleader use care in drawing the indictment in separate counts, and that the court submit to the jury for decision those phases of the indictment which are supported by the evidence."

Dissenting, Judge Lattimore, in a lengthy opinion cited Scott v. State, supra.

In Layman v. State, 126 Tex.Cr.R. 533, 73 S.W.2d 97, a robbery prosecution, the count of the indictment under which appellant was convicted charged a joint assault upon C. B. Humphries and Mrs. M. J. Humphries. The charge authorized a conviction if the jury believed beyond a reasonable doubt that the assault was made upon C. B. Humphries and Mrs. M. J. Humphries or either of them. Citing Pate, this Court concluded that the trial court

was unwarranted in instructing the jury to find the accused guilty if the assault was committed upon either of the complaining witnesses, or used violence toward either of them. The Court, however, refused to reverse since no written objection to the charge was made (see Article 658, V.A.C.C.P., now Article 36.14, V.A.C.C.P., 1965) and the inhibition of the Court to reverse unless the error in the charge was calculated to injure the defendant's rights or unless it appears he had been deprived of a fair and impartial trial. See former Article 666, V.A.C.C.P., now Article 36.19, V.A.C.C.P., 1965.

In the case at bar there was a timely objection.

If it can be argued that Scott v. State, supra, does, in fact, support the type of charge given in the instant case, its continued viability may be seriously questioned. If not expressly, it has at least been implicitly overruled.

If the indictment did, in fact, charge one offense, then we are confronted with the general rule that the State is bound by the descriptive averments in the indictment, and the rule that where particular facts and circumstances are set forth constituting descriptive identity of the offense charged the trial court is limited in its charge to those matters specifically alleged. Moore v. State, 140 Tex.Cr.R. 482, 145 S.W.2d 887. For when the issue is determined in a criminal case by indictment or information and pleadings of the defendant, the issue is thus joined and cannot be changed or limited by the court's charge to the jury. Grooms v. State, 156 Tex.Cr.R. 504, 244 S.W.2d 229. See 31 Tex.Jur.2d, Instructions, Sec. 69, pp. 596, 597.

The question, therefore, in my mind, is not whether error was committed, but whether the error was harmless or reversible.

Judge Morrison in his opinion takes the position that the indictment charges one offense and there was no variance between

such indictment and the proof since both Kaskas were killed in one fusillade of bullets from the same weapon. He finds no reversible error in the court's disjunctive charge and would overrule Pate, Barton and Brown if those decisions contained more than dicta bearing on the question presented. It is his position that despite the conjunctive pleading charging one offense, the State need only have proved the killing of one person to sustain a conviction and that the charge as given was harmless error.

In view of the facts of the case at bar, I am, however, in full agreement with Presiding Judge Woodley that the murder of the Kaskas *was not* in law one and the same transaction, act or offense. See "The Dual Meaning of One Offense," 20 Baylor Law Rev. 218.

Putting aside any question of duplicity (the joinder of two or more distinct offenses in one count),[2] and any question of the violation of Article 21.24, V.A.C.C.P., prohibiting charging more than one offense in the same indictment with certain exceptions [3] (cf. Breeden v. State, Tex.Cr. App., 438 S.W.2d 105; Rose v. State, Tex. Cr.App., 427 S.W.2d 609; Vannerson v. State, Tex.Cr.App., 408 S.W.2d 228), I further agree with Judge Woodley as to the proper course that should have been pursued by the trial court when it became known that both of the Kaskas were not

killed by a single act. I am also unaware of any authority for a final conviction for two murders committed by separate acts charged in the same indictment.

I do disagree with both Judge Morrison and Judge Woodley that the error in the court's charge was harmless error and that, if supported by the evidence, the verdict may be applied to either murder.

Indeed, a strong argument can be made for the harmless error position. The indictment gave the appellant actual knowledge of the character of his accusation so that he could not have been mislead while preparing his defense and he will be able to advance these proceedings as bar to further prosecution for the same transaction. See Nees v. Culbertson, 406 F.2d 621 (5th Cir.); Gay v. United States, 408 F.2d 923 (8th Cir.).

Even so, it is observed that apparently in view of the evidence the trial court separated the allegations of the indictment into two substantive crimes, but did not require the jury to find the appellant guilty of only one offense in the event of a guilty verdict. The jurors were authorized by the charge to vote for a general verdict of guilty if they believed beyond a reasonable doubt the appellant murdered either David or Anton Kaska. Supposing that only harmless error occurred if the 12 jurors found the appellant guilty of the murder of David Kaska or if the 12 jurors found the

---

2. In 1 Branch's Ann.P.C., 2nd ed., Sec. 526, pp. 502, 505, it is said: "An indictment which in one count charges the murder of two persons is not bad for duplicity if upon its face it does not show that the killing occurred at different times. Rucker v. State, 7 [Tex.] App. 549; Chivarrio v. State, 15 [Tex.] App. [330] 334; Jones v. State, 89 [Tex.] Crim. [R.] 355, 231 S.W. 122. See also Good v. State, 98 [Tex.] Crim. [R.] 556, 267 S.W. 505."

The indictment in the instant case not being duplicitous on its face, it would appear that the appellant waived any question of duplicity by raising the question for the first time by motion in arrest of judgment. See Ferguson v. State, 80 Tex.Cr.R. 383, 189 S.W. 271.

3. Article 21.24, supra, includes the identical wording of former Article 417, V.A. C.C.P., and the substance of the second paragraph of former Article 408a, V.A. C.C.P.

Said Article 408a was enacted in 1959 (Acts 1959, 56th Leg., p. 864, ch. 390, sec. 1) and required in effect that where negligence was an element of the offense, complaint, information or indictment must allege the act relied upon to constitute negligence and that in charging such offense or any misdemeanor not more than one offense may be charged in the complaint, information or indictment. Such requirement was made applicable to all offenses by virtue of Article 21.24, supra, with certain exceptions.

appellant guilty of murder of Anton Kaska, can we tell from the verdict that this actually occurred?

Under the provisions of Article V, Sec. 13, Texas Constitution, Vernon's Ann., and Article 36.29, V.A.C.C.P., all twelve jurors in a felony case must reach a unanimous conclusion in order to render a legal verdict.[4]

Under the charge given in the case at bar the jury could have split in its conclusion and decision and still have returned a seemingly unanimous general verdict. For example, six jurors could have believed beyond a reasonable doubt that the appellant murdered David Edward Kaska with malice aforethought as charged but could have entertained a reasonable doubt as to whether the appellant murdered Anton Kaska as charged. Under the court's charge these six jurors would have been authorized and justified in joining in the general verdict that was returned. The other six jurors could have believed beyond a reasonable doubt that the appellant, with malice aforethought, murdered Anton Kaska as charged or could have entertained a reasonable doubt as to whether appellant killed David Kaska. These six jurors would have also been authorized and justified under the charge given to join in the general verdict returned. It should further be remembered that the court also submitted the issue of murder without malice. Under these circumstances, it is impossible to tell whether 12 jurors unanimously agreed that the appellant was guilty of murdering with malice aforethought either David or Anton Kaska. Certainly the charge was calculated to mislead and confuse the jury and for this reason alone, being of sufficient gravity, would authorize a reversal. See 31 Tex.Jur.2d, Instructions, Sec. 63, p. 587.

Does this Court have the authority to say as a matter of law there is no reasonable basis to assume the jury would have reached a different verdict regardless of how the case was submitted? Can we in such cases as this substitute ourselves for the jury? I think not.

While it may seem academic to others, I cannot conclude that the error is harmless. Surely the State should not be allowed to put a man to death, regardless of the enormity of the crime charged, unless it is clearly established that all 12 jurors have agreed that he is guilty of an offense, even if it is only one substantively specified in the indictment. It will be a matter of small moment to this appellant if and when he is placed in the electric chair to be told "We don't know whether 12 jurors found you guilty of murdering either Anton or David Kaska, but don't worry, you are not likely to be re-tried for the murder of either."

I respectfully dissent.

---

4. Article 36.29, supra, does provide that a verdict may be returned by eleven jurors where one juror dies or becomes disabled from sitting before the charge of the court is read to the jury. Such situation is not here presented.